MARY LILLIAN HUTTON, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals. October 7, 1912.**

1. **NEGLIGENCE: Alighting from Street Car: Admissions.** Plaintiff sued for damages for injuries she received when an electric street car started before she had alighted therefrom, and she was thrown to the street. She stated repeatedly, on direct and cross-examination, that the car started just as she was in the act of stepping down to alight, but finally in answer to a leading question as to whether she started to get off the car after it started, coupled with another question whether or not a man swung on to the car against her just before she started to get off, she answered, "yes." *Held*, that plaintiff was misled by the question, and the court properly refused to direct a verdict for the defendant.

2. **WITNESS: Remarks of Court.** The remark of the trial judge that it would be fair to a witness to be permitted to read a statement before she made answer to a question concerning its contents, was not prejudicial.

3. **EXPERT WITNESS: Hypothetical Question.** It is not error to allow a doctor to answer, a hypothetical question as to whether, under the facts in evidence, the injury to plaintiff in falling from the car could have produced the condition he found her in when he examined her, that: "It could, that kind of a fall."

Appeal from Jackson Circuit Court.—*Hon. James H. Slover*, Judge.

AFFIRMED.

*John H. Lucas* and *Piatt & Marks* for appellant.

(1) For the action of the trial court in charging defendant with unfairness and compelling it to deliver to plaintiff her signed statement before defendant had used it or attempted to use same, this case must be reversed. Levels v. Railroad, 196 Mo. 606; Rose v. Kansas City, 125 Mo. App. 231; Steltemier v. Barrett, 115 Mo. App. 323. (2) Plaintiff's admission that the car had started before she got out is conclusive against her. State v. Brooks, 99 Mo. 137; Cogan v. Railroad, 101 Mo. App. 179, 189; Shanahan v. Tranist Co., 109 Mo. App. 228; Diamond v. Kansas City, 120 Mo. App. 185. (3) Under the proof made of injuries received, the verdict is excessive and must be set aside. Lofink v. Transit Co., 94 N. Y. Supp. 150; Ry. Co. v. Freedman, 46 S. W. (Tex.) 101; Brake v. Kansas City, 100 Mo. App. 611. (4) This case should be reversed for the action of the court in permitting the medical expert to answer an illegal and improper hypothetical question, over defendant's objection. Holtzen v. Mo. Pac., 140 S. W. 767; Charles H. Moore, Adm., Respondent, 1 Mo. Pac. Ry., Appellant, No. 9732, March Term, 1911, Kansas City Court of Appeals; Smith v. Kansas City, 125 Mo. App. 158; Baehr v. Casualty & Surety Co., 133 Mo. App. 543; Sutter v. Kansas City, 138 Mo. App. 113; Roscoe v. Street Railway, 202 Mo. 576; Smart v. Kansas City, 208 Mo. 162, 200; Glasgow v. Street Railway, 191 Mo. 358, 364; Taylor v. Railroad, 185 Mo. 239; State v. Hyde, 234 Mo. 200, 253.

*Cowherd, Ingraham, Durham & Morse* for respondent.

(1)   The trial court followed the well settled rule in requiring defendant's counsel to show plaintiff her alleged written statement before questioning her as to whether she made certain allegations therein. Prewitt v. Marlin, 59 Mo. 325-334; Wilkerson v. Eilers, 114 Mo. 251-252; State v. Talbot, 73 Mo. 358; State v. Meyers, 198 Mo. 255.   (2)   The so-called conclusive and fatal admission of plaintiff was only a word given in answer to a double barreled question put to her in a rapid fire cross-examination.   The whole testimony of plaintiff shows she either did not understand the question or was confused.   Black v. Street Railway, 130 Mo. App. 551.   (3)   The verdict is very modest when the permanency of the injury and the amount of pain and disability is considered.   (4)   Plaintiff's hypothetical question as it was finally put and the answer given thereto, were in proper form.   Baehr v. Casualty Co., 138 Mo. App. 113; Taylor v. Railroad, 185 Mo. 239; Bragg v. Street Railway, 192 Mo. 331; Lutz v. Street Railway, 123 Mo. App. 502; Oneil v. Kansas City, 178 Mo. 91; Bragg v. Street Railway, 192 Mo. 331; Kinlen v. Railroad, 216 Mo. 173; Orr v. Bradley, 126 Mo. App. 152. ·  (5)   Permitting leading questions to be asked is a matter entirely for the discretion of the trial court.   State v. Bateman, 198 Mo. 222; State v. Knost, 207 Mo. 23; Chaney v. Ins. Co., 62 Mo. App. 48.   (6)   Plaintiff's instruction 1 correctly declares the law of this case on the question of defendant's liability.   Hufford v. Street Railway, 130 Mo. App. 644; Black v. Street Railway, 130 Mo. App. 551; Green v. Street Railway, 122 Mo. App. 649; Nelson v. Railroad, 113 Mo. App. 709; Jerome v. Railroad, 155 Mo. App. 205; Ridenhour v. Railroad, 102 Mo. 281; Hurley v. Street Railway, 120 Mo. 267.

.   BROADDUS, P. J.—Action· for damages.   The plaintiff claims she was injured while stepping off one of defendant's street cars near the intersection of

Twelfth and Cherry streets in Kansas City, Missouri, on June 16, 1909.

The plaintiff is a young woman, at the time of her injury twenty years of age, weighing 160 pounds, and by occupation a milliner's maker. At about 7:30 a. m., of the day she was injured, she boarded a west bound car on Twelfth street for passage to said intersection of Twelfth and Cherry streets. Her evidence went to show that when the car arrived at said intersection, it stopped at the usual place for passengers to get on and off.

The main controversy is whether she attempted to get off the car while it was standing or while it was in motion, and it is urged by appellant that plaintiff's own statements, taken as a whole, show that she got off the car after it had started.

Her testimony was to the effect, that the car and both vestibules were crowded; that, before she reached her stopping place, she signaled the conductor to stop by pressing on the push button, which was the usual way for passengers to signify that they wanted the car to stop for them to get off. She testified, in answer to a question as to what happened, as follows: "Well, as the car neared Cherry street I arose from my seat and started to the back of the car, as it was crowded. I stepped down in the vestibule and pushed past the conductor, who was standing there, and as the car stopped at Cherry street I stepped to the door to get off, and before I could step down a man wanted on and swung up, and I had to push back until he could step down or step on; as soon as he took his arm away from the rod I started to step off, but before I stepped down from the car the car started and threw me to the street."

On cross-examination she was asked: "Where were you when the car started? A. I was stepping down from the car to the street.

Q. "How long would you say—they came to a full stop, didn't they? A. Yes, it stopped just long enough for this man to get on and for me to start to get off.

Q. "How long would you say the car stopped there, a matter of a minute and a half or two minutes? A. Possibly a minute.

Q. "Did you make any statement to the company about this accident? A. Yes, sir.

Q. "Did you read it over before you signed it? Did you read it? A. Yes, sir.

Q. "Don't you remember in that saying that some man jumped on the car as you were getting off?"

Plaintiff's counsel insisted that his client should be permitted to read the statement before she answered the question. The defendant's counsel consented that the witness might read the particular statement referred to, but objected to her reading the entire statement. The court ruled that she might read the entire statement, and said that would be fair to the witness. To this action of the court, defendant excepted.

The witness denied that the signature to the writing offered was her own, but she admitted, practically, that all the statements it contained were correct.

After a number of questions, some of which referred to the man getting on the car about the time plaintiff was preparing to get off, defendant's counsel asked: "You were out there to get off and he swung up there to get in? A. Yes, sir.

Q. "And he swung in against you and you got out after the car started and you fell? A. Yes, sir."

The written statement was given in evidence by defendant. It corresponds, in every essential particular, with the plaintiff's evidence, except as to the answer to the last foregoing question.

Charles Bassett, whose place of business was near the intersection of the two streets, testified; that the

car stopped at the usual place for stopping; that he was standing outside of his shop and saw the plaintiff fall and helped to pick her up; that he say one man get on the car as the plaintiff fell off; and that the car was in motion while she was falling.

The plaintiff did not appear at first to have been seriously injured, but her evidence and that of her witnesses tend to show that in a short time thereafter it was disclosed that her injuries were very severe, and resulted in permanent disability.

The defendant's conductor and motorman in charge of the car at the time both testified that it did not stop at the usual place for stopping—the intersection of Cherry and Twelfth streets.

Several persons, who were passengers on the car at the time, testified that the car did not stop and that plaintiff steped or fell off while it was in motion. And other evidence tending to contradict that of plaintiff was also introduced by the defendant.

Doctor Longan, who had examined the plaintiff and learned the history of her case, and who found a partial displacement of her womb, was asked the following question: "Doctor, I will ask you whether, if a lady, twenty years of age, was thrown while stepping off a street car when she was in the act of alighting, falling upon the right knee and left side, whether such a fall would or would not produce such a displacement of the womb as you found in this patient when you made the examination? A. It could, that kind of a fall."

Instruction No. 1 given for the plaintiff, and to which exceptions are taken by defendant, reads as follows: "If you find and believe from the evidence that on the 16th day of June, 1909, defendant was engaged in the operation of a street railway on Twelfth street in Kansas City, Missouri; that plaintiff was a passenger on one of defendant's cars in said city going west; that it was customary for passengers on said cars to

notify the employees in charge of the same when they wished to alight from said cars by pushing a button provided for such use; that before reaching Cherry street plaintiff notified the conductor in charge of said car that she wished to get off at said street by pushing such button; that said car stopped at Cherry street; and the plaintiff started to get off the same; that while she was in the act of getting off said car, and in the exercise of ordinary care, if you find she was exercising such care, the servants and employees of defendant in charge of said car negligently and carelessly started the same before she had reasonable opportunity to alight therefrom and she was thereby thrown to the ground and injured, then you will find for the plaintiff and assess her damages at such sum as you may believe will reasonably compensate her for such injuries as you may believe from the evidence she has received, if any, not to exceed, however, the sum of $10,000.''

The defendant asked and the court refused a demurrer to plaintiff's case. The jury returned a verdict for the plaintiff in the sum of $3000. From the judgment on the verdict, defendant appealed.

It is contended that the plaintiff's admission that the car had started before she attempted to get off bars her right to recover, and defendant has cited numerous decisions to the effect that solemn admissions made in open court, whether orally or by written pleadings, are binding upon the party making them. The law in that respect is so well settled that comment is unnecessary.

If the plaintiff's evidence is to be taken as an admission that she attempted to get off the car after it started, she ought not to be permitted to recover, as the injuries she sustained were the result of her own negligence.

Plaintiff stated repeatedly on examination, and on cross-examination, that the car started just as she was

in the act of stepping down to alight. And she made a similar statement in the writing she made to the company. Finally, after having been cross-examined more than once and the matter gone over several times, in answer to a leading question by the defendant's counsel as to whether she started to get off the car after it started, coupled with another question, whether or not a man swung onto the car against her just before she started to get off, she answered, "yes."

Was it for the court, under the circumstances, to direct the jury to return a verdict for the defendant on the theory that the answer was a solemn admission that she attempted to get off after the car had started? We think not. The most indisputable inference to be drawn from her previous testimony and statement read in evidence is, that plaintiff was misled by the question, and the answer was only in response to that part of the question, whether a man swung onto the car and against her when she was preparing to alight. A double leading question, one which the witness would answer in the negative and the other in the affirmative if asked separately, is liable to be answered, yes or no. This is well known by the judges and practitioners at the bar. It would be going outside of our duty to hold, in such instances, that the witness should be concluded by such a mode of questioning.

It is claimed by defendant that the court's remarks, made to defendant's counsel when he asked if she had not made certain statements, were calculated to prejudice the defendant in the minds of the jury. It is insisted that the court charged the counsel with being unfair with the witness when the ruling was made that the statement which was in writing should first be submitted to the witness for her inspection before making answer. But we do not understand that the record shows that the court made any such remark. The remark was, that it was fair to the witness that she should be permitted to read the statement before

she made her answer; and that is the law. And the remark was not equivalent to saying that the counsel was unfair, and we know of no authority that would prevent a judge under the circumstances as characterizing the act as unfair to the witness, when, as in this instance, the counsel persisted against the ruling of the court that the witness should not answer the question before she had had the opportunity of reading the statement. The court would have been justified in reprimanding or imposing a fine upon him for his conduct.

There was no error in the action of the court in allowing Dr. Longan to answer the hypothetical question as to whether, under the facts in evidence, the injury to plaintiff in falling from the car could have produced the condition he found her in when he examined her, and his answer that: "It could, that kind of a fall." The question and answer were proper under the authorities, and the answer certainly was merely the expression of an opinion and not a conclusion. The rule is clearly stated in Taylor v. Railroad, 185 Mo. 239, and followed by this court in Holtzen v. Railroad, 159 Mo. App. 370, and such is the holding in many other cases.

Two objections are raised to plaintiff's first instruction. First, that "It directs a verdict for plaintiff, if defendant failed to hold the car still sufficiently long to give plaintiff a reasonable opportunity to alight therefrom; in other words, if the car made a stop and start so nearly simultaneously as not to allow sufficient time between said event for a passenger to alight, then the passenger had the right to alight while the car was in motion, and, if thrown by so doing, he is entitled 'to recover." The defendant attempts to apply its theory to a supposed state of facts, and not to the facts in proof, and, therefore, has no bearing on this case. The theory, after all, is but saying that a passenger is not justified in attempting to alight from

a car while it is in motion, which no one disputes. But, if the act of the passenger in attempting to alight is simultaneous with that of the starting of the car, the passenger is not to be charged with negligence for his act, and it is negligence on the part of the carrier to start the car under such circumstances.

The second objection is, that it permitted the jury to assess damages for inflammation of plaintiff's womb and for dizzy headache, which were purely conjectural and not shown to have been the result of the injury.

To trace the results of a fall from a car onto the streets of a city is, in many cases, a difficult matter. Direct and positive evidence is, in many cases, impossible, and the best that we can do is to trust to the evidence of medical experts and to the symptoms as they may develop from time to time. We know that an injury to one part of the human anatomy produces a serious but unexpected result upon some of its other parts, but are unable to account for it. The medical expert, by reason of his education and experience, is enabled, in such instances, to trace the result to the injury. It was by this kind of evidence plaintiff sought to make out her case, and we are not prepared to say it had no probative force, but, on the contrary, we believe it had.

While the preponderance of the evidence was greatly in defendant's favor, and the plaintiff was not as frank and consistent as she should have been, we are not authorized, under the law, to interfere with the verdict of the jury, as they were the sole judges as to the weight of the evidence and the credibility of the witnesses.

Many of the questions raised in defendant's argument are nonessential and will not be noticed. Finding no error in the trial, the cause is affirmed. All concur.