JULIA LEWKOWITZ, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, December 2, 1913.

1. DAMAGES: Personal Injuries: Opinion Evidence: Invading Province of Jury. In an action for personal injuries, an opinion of a medical expert that a certain disease might or could have resulted from trauma, and particularly from a fall of the character described and the injuries therefrom as they appeared at the time of the accident, is competent.

2. EVIDENCE: Guessing. The guess of a witness is not competent evidence.

3. DAMAGES: Personal Injuries: Proximate Cause: Sufficiency of Evidence. In an action for personal injuries alleged to have been negligently inflicted, *held* that the evidence was sufficient to establish a causal connection between the accident and the disease with which plaintiff was afflicted.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

AFFIRMED.

*Boyle & Priest* and *S. P. McChesney* for appellant.

The court erred in overruling defendant's motion to strike out the testimony of Dr. Hopkins relating to the question of Bright's disease. (a) Because there was no causal connection established between the accident and the disease known as Bright's disease. Warner v. Railroad, 178 Mo. 125; Goransson v. Mfg. Co., 186 Mo. 300; Trigg v. Land Co., 187 Mo. 227; Byerly v. Light Co., 130 Mo. App. 593. (b) Because the doctor was allowed, over defendant's objection, to testify from condition (that is, albumen in the urine) to what might have caused it. Holtzen v. Railroad, 159 Mo. App. 370. (c) Because the doctor testified that he based his conclusion upon guess, that the kidney was twisted on its pedicle by the accident and that that caused the disease known as Bright's disease. Evidence based on a guess is of no probative force. McCreery v. Railroad, 221 Mo. 18.

*Henderson, Marshall & Becker* and *G. B. Arnold* for respondent.

ALLEN, J.—This is an action for damages for personal injuries alleged to have been received by plaintiff while alighting from one of defendant's cars in the city of St. Louis, which it is said prematurely started, throwing plaintiff to the street and injuring her. Plaintiff recovered and defendant prosecutes the appeal.

The only assignment of error before us pertains to the overruling of a motion of defendant to strike out certain testimony of a physician who testified as a witness for plaintiff. It appears that plaintiff is quite a large woman, and that when she was thrown or fell, while attempting to alight from the car, she struck the end of her spine and the back of her head against the surface of the street, and that the injuries result-

ing therefrom caused her to be confined to her bed for some ten weeks thereafter.

Dr. Hopkins, who testified for plaintiff, was her family physician. He examined her and treated her shortly after the accident, and testified as to her injuries. In describing her condition shortly after she was injured, he said that "the greater portion of the pain was right at what we generally call the small of the back, just above the coupling of the hips and at the end of the spine;" that upon examining the end of the spine, he found that he "could double it," i. e., it was preternaturally movable, and that plaintiff manifested great pain when it was thus moved. He testified that, on the evening of the injury, he examined the urine and found that it showed signs of bright blood; that blood did not appear in the urine thereafter however; that it was difficult to tell where the blood came from, but that it could have come from her kidneys; that he examined the urine some fifty. times, and every day during the first week after the injury, to see whether there were kidney lesions or anything to manifest an inflammation of the kidneys; that in his early examinations he found no albumen, but that, about three weeks after the accident, he discovered albumen in the urine, which he stated was one of the prominent symptoms of Bright's disease; that this "means an inflammation of the kidneys," technically known as nephritis, which could result from tramatism; and that a fall of the character such as was described could produce it, by causing the kidney to be twisted on its pedicle.

A portion of the testimony of this witness, on cross-examination by defendant's counsel, was as follows:

"Q. You said that this Bright's disease might be caused by a twisted kidney, do you know whether that kidney was twisted or not? A. Twisted on its pedicle.

"Q.  Do you know whether it was twisted on its pedicle or not?  A.  I couldn't see into it, but we have got to take some things for—

"Q.  Do you know, doctor, whether it was twisted on its pedicle or not?  A.  I couldn't tell whether it was or not; no, I couldn't say it was; only we have got to take manifestation for that, that is, the results have got to show.

"Q.  But so far as you know, you don't know whether it was twisted on the pedicle or not?  A.  I said it was the supposition that it could be; I don't know.

"Q.  It is a matter of speculation on your part whether it was or not?  A.  It is just the same as making the diagnosis of any case, it is from the knowledge of what happens that we have to judge from, without cutting the abdomen open.  You are guessing; I am using my knowledge to bear on the subject, drawing conclusions from results.

"Q.  And that conclusion is a guess?  A.  And that conclusion, if you put it that way, would be a guess, yes, sir."

Thereupon defendant's counsel moved "to strike out the doctor's testimony relating to the question of Bright's disease, on the ground that there is no causal connection between that condition and this accident."

After argument of counsel, this motion was overruled, defendant excepting.

The point that there was no causal connection shown between the fall which plaintiff received and the development of Bright's disease, from which it appears she thereafter suffered, we think is not well taken.  The purport of the testimony of this witness on direct examination, was not, by way of conclusion, to the effect that the disease, known as Bright's disease, resulted from the particular accident in question, but his testimony went to show that, in his opinion as a medical expert, the disase might or could

have resulted from trauma, and particularly from a fall of the character described and the injuries therefrom as they appeared at the time of the accident. This was not violative of the rule respecting evidence of this character. [See Taylor v. Railroad, 185 Mo. 239, 84 S. W. 873; Hutton v. Street Railway Co., 166 Mo. App. 645, 150 S. W. 722; Jerome v. Railways Co., 155 Mo. App. 202, 134 S. W. 107.]

But it is urged that the doctor's testimony above set out showed "that he based his conclusion upon mere guess that the kidney was twisted on its pedicle by the accident, and that that caused the disease known as Bright's disease;" and that being based upon mere guess, the evidence is of no probative force. And in support of this we are cited to McCreery v. Railways Co., 221 Mo. 18, 120 S. W. 24, where a witness, who disclaimed ability to form an opinion regarding the speed of a car, was permitted by the trial court to state what his guess would be respecting the same, and this was held to be error. There can be no doubt as to the incompetency of such testimony. Here, however, not only was the witness testifying as an expert, but his later testimony, on cross-examination, frees the case from any possible prejudicial error on this score. A portion of such testimony follows:

"Q. Do you mean to sit there and tell this jury that the plaintiff is suffering from Bright's disease as a result of this accident? A. The indications point that way.

"Q. And yet you cannot tell whether or not that kidney is twisted? A. That is my diagnosis.

"Q. And so you are telling this jury, as a matter of fact, because that is simply your guess, you are telling it to this jury?

"Mr. Arnold: I object to his characterization of it.

"The Court: The Supreme Court has said pretty much the same thing about all expert testimony. I do not know that that is improper.

"Q. And you are just giving your guess? A. I am just giving my judgment."

It will be observed that the witness was here questioned in a way which would not have been permissible on direct examination, against objections thereto. But of this, of course, defendant cannot complain. By this examination the defendant brought forth an expression of opinion from the witness to the effect that the plaintiff was suffering from Bright's disease as a result of the accident; that the witness's diagnosis, as a physician, was that plaintiff's kidney was twisted; and that instead of this being the witness's mere guess, the latter was in fact giving his judgment thereupon, or expressing an opinion as a medical expert.

It appears to be undisputed that plaintiff was in fact suffering from Bright's disease. That such disease could be caused by an injury to the kidney, fully appears from the expert testimony adduced. Plaintiff's physician, who had treated her, testified that, in his opinion, there was an injury to the kidney, and that such an injury could be caused by a fall of the character described. And added to this, this witness, at the instance of defendant, testified that the indications were that plaintiff "was suffering from Bright's disease as a result of this accident." In the face of this record, it cannot be said that there was no evidence to show a causal connection between the accident and the disease from which plaintiff was suffering.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.