## THE STATE v. WEST, *Plaintiff in Error.*

1. **Competency of Juror.** A person who, upon examination on the *voir dire*, declares that he would not convict one accused of murder upon circumstantial evidence, or that he would have scruples in doing so, is not competent to sit as a juror upon a trial for murder.

2. **The Venue of a Homicide** may be establishd, like any other fact, by proof of facts and circumstances tending to show where it occurred. Express testimony is not necessary.

3. **Witness.** A person is not disqualified as a witness because, before he is called the prosecuting attorney has promised to dismiss an indictment then pending against him, after he shall have given his testimony.

4. **Verdict:** INTOXICATING LIQUOR IN THE JURY ROOM: CONTEMPT. It is improper, and should be held a contempt of court for any officer to furnish the jurors, engaged in the trial of a cause, with intoxicating liquor But in the absence of proof of intoxication or other improper conduct on their part, the fact that such liquor has been furnished to them, and used by them, is no ground for setting aside a verdict.

*Error to Cooper Circuit Court.*—HON. GEO. W. MILLER, Judge.

*John Cosgrove* and *W. Y. Pendleton* for plaintiff in error.

*J. L. Smith*, Attorney-General, and *J. H. Johnson*, Prosecuting Attorney, for the State.

HENRY, J.—Defendant was indicted at the November term, 1878, of the circuit court of Cooper county, for the murder of a man whose name was to the jurors unknown. At the January term, 1879, of said court, he was tried and convicted of murder in the first degree, and sentenced to be hanged. From the judgment of the circuit court, he has appealed, assigning numerous errors as having occurred in the trial, among them : *First*, The rejection by the court for incompetency of the following persons summoned as jurors, viz.: W. Parker, A. Santer, J. P. Moore, Geo. Fluke and W. H. Moore. *Second*, That the conviction was obtained without proof that the homicide was committed in Cooper county. *Third*, That the court erred in declaring that Samuel L. Ewing was a competent witness, and permitting him to testify against defendant. *Fourth*, That the jury was furnished with intoxicating liquor while the trial was progressing, after they had retired to consider of their verdict. The other error assigned was that instructions were given for the State which should have been refused, and others asked by defendant were refused, which should have been given.

With respect to the rejection, by the court, of persons summoned as petit jurors, the record shows that they were asked, on their examination on the *voir dire*, if they would convict one accused of murder on circumstantial evidence alone. Except A. Santer, they answered they would not, and he, that " he had scruples in doing so." In Wagner's Statutes, sections 9, 10, 11, 12 and 13, pages 1102, 1103, are enumerated certain disqualifications, either of which is a sufficient ground for challenging a juror, and the fact that a person would not find.

1. COMPETENCY OF JUROR.

one accused of murder guilty on circumstantial evidence alone, is not among these disqualifications. Hence, it is contended by defendant's counsel the court erred in allowing that fact to be sufficient cause for challenging the jurors.

A juror should be in condition of mind to do exact justice between the State and the accused. The State has the same right as the defendant to an impartial jury, and if a juror, on his examination on the *voir dire*, should admit that he bore malice toward the accused, and would be reluctant to acquit him, even though he should not be proven guilty by the State, he should be rejected by the court as an incompetent juror, notwithstanding the statute does not declare the existence of such malice, on the part of the juror, toward the prisoner, a disqualification. In the matter of selecting a jury in a criminal cause, no advantage is given to the accused, except in the number of peremptory challenges allowed him. In other respects, there is an equality of right, and it is difficult to find any sufficient reason for requiring the State to submit its cause to a jury composed of men who have determined in advance to acquit, which would not equally justify a requirement of the accused that he should submit to be tried by a jury predetermined to convict him. That the fact which the interrogatory proposed to elicit was not included among the disqualifications enumerated in the statute, is not to be regarded as an expression of the legislative will, that it should not render one incompetent to sit as a juror in a case, is established by *Lyles v. The State*, 41 Texas 172; *Lester v. The State*, 2 Texas Court of Appeals 432; *Chouteau v. Pierre*, (of color,) 9 Mo. 3. In the latter case, before the jury was sworn, the defendant, Chouteau, asked leave to inquire of the jurors when sworn to answer questions, if any of them felt bound in conscience to find a verdict in favor of the freedom of plaintiff, notwithstanding the law might hold him to slavery. The circuit court refused his request, but the Supreme Court held that the court should

have permitted the defendant to ask the question, and that an affirmative answer would have been sufficient ground for excluding a juror so answering from the panel. The statute of 1845 prescribed the causes for which a juror might be challenged, but that a juror felt bound in conscience to find a verdict in favor of the freedom of a slave, notwithstanding the law held him in slavery, was not one of these causes. The decision, therefore, in *Chouteau v. Pierre*, is a direct authority in support of the action of the circuit court in the premises.

With respect to the second point made by defendant's counsel, while no witness stated directly, that the homicide was committed in Cooper county, facts and circumstances were established tending to show that it occurred in that county, and the question whether it did or not, having been submitted to the jury by the court in a proper instruction, and they having found by their verdict that the murder was committed in Cooper county, there is nothing to justify us in disturbing the verdict on that issue. The venue is to be established like any other material allegation. It was competent to prove the offense to have been committed in Cooper county, by circumstances which led to that conclusion, although no witness expressly stated that it occurred in Cooper county.

2. THE VENUE OF A HOMICIDE.

As to the third alleged error, Sam. L. Ewing was a competent witness, and that the prosecuting attorney had promised Ewing, before he testified, that he would dismiss an indictment pending against him in the Cooper circuit court, after he should have testified in the case against West, was a circumstance for the consideration of the jury, in determining what credit they would give to his testimony, but did not affect Ewing's competency as a witness. There is no pretense that the promise was made to induce him to testify falsely. He had informed the prosecuting attorney before the alleged, or any promise was made, what he would testify to, and the evidence and status of this witness before the jury is somewhat analogous to

3. WITNESS.

that of an accomplice, who testifies for the State against his associate in crime.

On the motion for a new trial, affidavits were filed showing that intoxicating liquor had been supplied to the jury by the deputy sheriff, Williams, who had charge of them. Two and a half quarts were so furnished during the trial, about half of which was procured from the time they retired to consider of their verdict, until they returned the same into court, a period of nearly two days. R. W. Whitlow, one of the jurors, states in his affidavit, that the only time he ever saw whisky drank was in the morning before breakfast, and " at no time did he see a juror take more than one dram a day, and that at no time was any juror under the influence of liquor in the least degree." L. L. Williams, the deputy sheriff, stated in his affidavit that he never saw any juror in the least degree affected by liquor, or either of them take more than one drink during the day. No one testified to any other misconduct of the jury. There is nothing in the affidavits, or any of them, or anywhere in the record, to the effect that any of the jurors were at any time intoxicated, or that the verdict was procured by any improper means. The practice of supplying jurors with intoxicating drinks is not approved, but, on the contrary, is to be condemned as improper. Men who have to determine as grave questions as those submitted to a jury in a prosecution for murder, should so conduct themselves as to excite no suspicion that their verdict, whatever it may be, is the result of anything but a calm and impartial consideration of the law and the evidence in the case. It should be held a contempt of court for any officer of the court to furnish a jury, or any member of a jury, with intoxicating liquor, except in a case of necessity; but it does not follow that the mere fact that ardent spirits have been furnished a jury, is sufficient to warrant either the trial, or an appellate court, in setting aside their verdict.

In the *State v. Upton*, 20 Mo. 399, Scott, J., delivering

*4. VERDICT: intoxicating liquor in the jury room: contempt.*

the opinion of the court, said: "We have never lent a willing ear to objections against verdicts, growing out of irregularities in the conduct of jurors, unless such irregularities affected the verdict, or were induced by means employed by the party obtaining it. Whilst the conduct of jurors cannot be too narrowly watched by the courts, yet, if they do misbehave, if it cannot be seen that such misbehavior affected the verdict, it has been thought best, under all the circumstances, to leave such misbehavior to the reprehension of the courts, and the punishment imposed by law for it." In that case it was proved, on motion for a new trial, that the jury, in their retirement, used intoxicating liquors, but it was not shown that any member of the jury was at any time intoxicated. Judge Scott observed on that subject, that: "No court would be warranted in receiving a verdict against a prisoner from a jury, any member of which was in the least under the influence of intoxicating liquor. But to hold that a verdict should be set aside for the use of ardent spirits by the jury, not carried to an excess, when such spirits are not supplied from a source interested or calculated to bias the minds of the jurors, would be establishing a rule which would result in no practical good, and prove very burdensome to parties."

The only remaining question of any importance is in regard to instruction number seven, given by the court for the State, which declared that: "In considering the confessions and declarations of defendant, you must consider them all together. The defendant is entitled to the benefit of what he said, if true, as is the State to anything he said against himself, &c.; what he said against himself the law presumes to be true; what he said for himself the jury may believe or disbelieve, as it may be shown to be true or false by the evidence in the case, but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief." It is contended that, by this instruction, the court assumed that

defendant made a confession to the witness, Ewing, and that this was error, inasmuch as defendant, in his testimony, denied that he made the confession testified to by Ewing. In addition to the alleged confession to Ewing, the prisoner, after his arrest, had made declarations to other persons which were introduced in evidence against him, and while the instruction is open to criticism, yet, taking the third instruction for the State in connection with it, the jury could not have been misled to the conclusion, that they were by the seventh instruction told by the court that defendant made the confession to Ewing. By the third instruction they were told that, " in considering what defendant said after his arrest, the jury must take it all together. He is entitled to the benefit of what he said for himself, if true, as is the State to the benefit of anything said against himself, in any conversation proved by the State."

The seventh declares that, " in considering the confessions, declarations, &c." The confessions and declarations were all made in conversations after defendant's arrest, and it is not to be supposed that the jury understood the word " confession " in its technical sense; and it seems that even the court did not employ the term in that sense. There was but one confession made, and that was in the conversation with Ewing, while the instruction speaks of confessions. The language of the third instruction is that, " in considering what the defendant said after his arrest, in any conversation, proved by the State, &c." The confessions as well as the statements to other witnesses, were included in the terms, " conversations proved by the State, &c." and that instruction submitted it to the jury to say whether defendant had made the confession testified to by Ewing or not. The court seems to have used the words " confessions " and " declarations" as synonymous, and we think it impossible, that the jury could have labored under the impression that the court had declared to them in substance

that they must take as true the testimony of Ewing in regard to the alleged confession.

The evidence, apart from the testimony of Ewing, was such that no jury disposed to deal fairly betwixt the State and the accused, could have hesitated to find him guilty. He had a fair trial in the circuit court, and his cause has been presented to this court with an earnestness and ability to be commended, but we are satisfied that no error occurred in the trial below, which would justify a reversal of the judgment, which is, therefore, affirmed.    All concurring.

AFFIRMED.