EUNICE M. MURPHY, Appellant, v. J. E. COLE.—88 S. W. (2d) 1023.

Division One, December 18, 1935.

*Walter Burch* for appellant.

*Anderson, Gilbert & Wolfort, Ragland, Otto & Potter* and *June R. Rose* for respondent.

FRANK, J.—Action by appellant, plaintiff below, to recover damages for the death of her husband caused by a collision between a Chevrolet roadster in which he was riding as a guest, and an International truck owned and operated by respondent, J. E. Cole. Verdict and judgment for plaintiff for $500, and plaintiff appealed.

The collision occurred on Manchester Road in St. Louis County. This road runs east and west and is paved with a concrete slab eighteen feet in width, with dirt shoulders on either side. At the time of the collision defendant's truck was headed west and standing at rest with its right wheels on the dirt shoulder and its left wheels on the concrete slab. The Chevrolet roadster in which plaintiff's husband was riding as a guest approached from the east and collided

with defendant's standing truck. A detailed statement as to the cause of the collision and who was responsible therefor is not necessary to a determination of the questions raised on this appeal.

It appears from the record that defendant carried liability insurance in the St. Paul Mercury Indemnity Company. It also appears that after the collision which resulted in the death of plaintiff's husband, said indemnity company agreed with defendant to make an investigation as to his liability to plaintiff, and furnish counsel to defend this case, reserving the right to contest its liability to defendant under the policy.

This cause was instituted and tried in the Circuit Court of Cole County.

The first error assigned is the action of the trial court in overruling the challenge for cause of juror W. H. Steininger.

In the course of impaneling the jury, it was developed upon the *voir dire* that juryman Steininger was local agent of the St. Paul Mercury Indemnity Company. Steininger did not write the policy in question. He testified that he had never heard of the case before, did not know the plaintiff, had not talked with the attorneys in the case, and had no prejudice in the case one way or the other. Plaintiff challenged this juror for cause and the challenge was overruled.

Section 8771, Revised Statutes 1929, enumerates certain grounds of disqualification. That section reads as follows:

"No witness or person summoned as a witness in any civil cause, and no person who has formed or expressed an opinion concerning the matter, or any material fact in controversy in any such cause, which may influence the judgment of such person, or who is of kin to either party to any such cause within the fourth degree of consanguinity or affinity, shall be sworn as a juror in the same cause."

It will be noted that above statute does not provide that an agent of one of the parties to a cause may not be sworn as a juror in such cause. Neither does it make such agency a ground of challenge for cause, but this statute is not all-inclusive and does not include the whole subject of the qualifications of jurors. We have so held. In State v. Miller, 156 Mo. 76, 84, 56 S. W. 907, we said:

"The fact that the statute enumerates certain grounds of disqualification does not exclude other grounds of incompetency. This has been consistently so ruled by this court since Chouteau v. Pierre, 9 Mo. 3. [State v. West, 69 Mo. 401; State v. Leabo, 89 Mo. 247; State v. Young, 119 Mo. 495.]"

In State v. West, 69 Mo. 401, l. c. 403, this court said, "A juror should be in a condition of mind to do exact justice between the State and the accused, . . . . and if a juror, on his examination on the *voir dire*, should admit that he bore malice toward the accused, and would be reluctant to acquit him, even though he should not be proven guilty by the State, he should be rejected by the court

as an incompetent juror, notwithstanding the statute does not declare the existence of such malice, on the part of the juror, toward the prisoner, a disqualification.'' Our judgment is that State v. West, supra, correctly states the rule which should govern the selection of juries. If for any reason, whether statutory or not, a prospective juror is not in a position to enter the jury box with an open mind, free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror. In the light of this rule, did the fact that juror Steininger, was local agent for the insurance company in question, render him incompetent as juror in this cause? We think it did. Both parties to a lawsuit are entitled to a panel of eighteen qualified men from which to select a jury. [Pietzuk v. Kansas City Railways Co., 289 Mo. 135, 232 S. W. 987, 992; State v. Naylor, 328 Mo. 325, 40 S. W. (2d) 1079, 1083; Theobald v. Transit Company, 191 Mo. 395, 419, 90 S. W. 354; Carroll v. United Railways Company, 157 Mo. App. 247, 264, 137 S. W. 303.] A juror in the employ of one of the parties to a cause might honestly believe he had no bias or prejudice one way or the other, yet, it is a matter of common knowledge that the frailties of human nature would cause him, perhaps unconsciously, to view the cause through the spectacles of his employer.

In Crawford v. United States, 212 U. S. 183, one in the employ of the United States Government was called as a prospective juror. Because of such employment this juror was challenged, and the challenge was overruled. On appeal, such action was held to be error. In so holding the court, among other things, said:

''A jury composed of Government employees where the Government was a party to the case on trial would not in the least conduce to respect for, or belief in, the fairness of the system of trial by jury. To maintain that system in the respect and affection of the citizens of this country it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead on that account to any doubt on that subject. . . . Modern methods of doing business and modern complications resulting therefrom have not wrought any change in human nature itself, and therefore have not lessened or altered the general tendency among men, recognized by the common law, to look somewhat more favorably, though perhaps frequently unconsciously, upon the side of the person or corporation that employs them, rather than upon the other side. Bias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence, and it might exist in the mind of one (on account of his relations with one of the parties) who was quite positive that he had no bias, and said that he was perfectly able to decide

the question wholly uninfluenced by anything, but the evidence. The law therefore most wisely says that with regard to some of the relations which may exist between the juror and one of the parties, bias is implied, and evidence of its actual existence need not be given.

"The position of the juror in this case is a good instance of the wisdom of the rule. His position was that of an employee who received a salary from the United States, and his employment was valuable to him, not so much for the salary as for the prospect such employment held out for an increase in his business from the people who might at first come to his store for the purchase of stamps, etc. It need not be assumed that any cessation of that employment would actually follow a verdict against the Government. It is enough that it might possibly be the case, and the juror ought not to be permitted to occupy a position of that nature to the possible injury of a defendant on trial, even though he should swear he would not be influenced by his relations to one of the parties to the suit in giving a verdict. It was error to overrule the defendant's challenge to the juror."

Coming closer to the question at issue, the case of Citizens' L., H. & P. Co. v. Lee, 182 Ala. 561, 578, is exactly in point. In that case the defendant held a policy of insurance covering the injury sued for to the amount of $5000. Concerning the right of the officers, agents and servants of the insurance company to act as jurors in that case, the court said:

"If the insurance company referred to in the motion and the evidence would be liable as for the judgment to be rendered in the case to the amount of $5000, then, of course, it had a direct pecuniary interest in the suit; and hence the stockholders, officers, agents, and servants of such company would be thereby disqualified as jurors for the trial of the case, and would be subject to challenge for such cause. If any such persons were on the venire or panels, it was not only proper that the court be informed thereof, but it was also necessary, in order that the jury might be purged of such disqualified persons."

Among other cases holding likewise are the following: Berbette v. State, 109 Miss. 94, 98, 67 So. 853; Featherstone v. Cotton Mills, 159 N. C. 429, 431, 74 S. E. 918; Georgia Railroad & Banking Company v. Tice, 124 Ga. 459, 465, 52 S. E. 916, 4 Ann. Cas. 200; State v. Davis, 91 W. Va. 241, 242, 112 S. E. 414; Peklenuk v. Isle Royale Copper Co., 187 Mich. 644, 647, 153 N. W. 1068; Hufnagle v. Delaware & Hudson Company, 227 Pa. 476, 479, 76 Atl. 205, 40 L. R. A. (N. S.) 982, 19 Ann. Cas. 850; Louisville & Nashville Railroad Co. v. Cook, 168 Ala. 592, 598, 53 So. 190.

Respondent contends that juror Steininger's relationship to the insurance company in question was not ground of challenge for cause. The following cases are cited in support of this contention. [Rytersky

v. O'Brine, 335. Mo. 22, 70 S. W. (2d) 538, 540; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S. W. (2d) 268, 274; Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673, 674; Ulmer v. Farnham, 28 S. W. (2d) 113, 115; Wendel v. City Ice Company of Kansas City, 22 S. W. (2d) 215, 217.] The cases cited are all Missouri cases. In neither of the cases was a juror challenged for cause. Neither of the cases discuss the competency of an officer, stockholder or agent of an insurance company as a juror in a case in which such company is interested in the result of the trial. They do hold that where it appears that an insurance company, although not a party to a suit, is financially interested in the result of the trial, the parties thereto are entitled to interrogate the jurors as to their connection, if any, with such insurance company, for the purpose of enabling them to intelligently make peremptory challenges. Such ruling is sound law, but it does not follow that if such interrogation should develop the fact that one or more of the prospective jurors was agent for the insurance company, that fact would not be ground of challenge for cause, and the cases do not so hold. Respondent also cites two Iowa Supreme Court decisions, Raines v. Wilson, 239 N. W. 36, 37, and Mortrude v. Martin, 172 N. W. 17, 22, holding that employment of a prospective juror as agent of an insurance company interested in the result of the cause on trial, is not ground of challenge for cause. These cases are out of line with the weight of authority on the subject. We hold it was error to overrule plaintiff's challenge to juror, Steininger.

Appellant contends that the trial court should have set the verdict aside because of false testimony offered by witnesses for defendant, relative to the alleged widening of the dirt shoulder along the edge of the pavement at the place where the collision occurred.

We find nothing in the record to justify the imputation of perjury, but as the judgment must be reversed on other grounds, no useful purpose would be served in discussing that question at this time.

Appellant next contends that the court erred in permitting witness, Copeland, to testify to the speed of appellant's automobile based upon the sound or hum of the motor.

Appellant's car was a Chevrolet roadster. Witness Copeland testified that he drove a Chevrolet; that he had driven a car since 1919; that he had been in contact with Chevrolet cars since 1925; that he was an automobile mechanic, and worked in the Chevrolet assembly plant for three years, did heavy repair work there. He further testified that from his experience with Chevrolet cars he was able to judge their speed by the sound of the motor; that the hum of a motor makes different sounds at different rates of speed; that judging from the flash of light he saw, and the time that elapsed between that and the collision, and the hum of the motor, he judged that appellant's automobile was traveling fifty or fifty-five miles per hour.

In Campbell v. St. Louis & Suburban Ry. Co., 175 Mo. 161, 177, 75 S. W. 86, a witness who did not see a street car was permitted to testify to its speed from the noise it made. This court held that such evidence should have been rejected, not on the ground that a witness should not be permitted to judge the speed of a street car by the noise it made, but because it was not shown that the witness was qualified by experience to speak on that subject. In so holding, we said, "Long training and study make men so proficient in particular subjects that they sometimes really know more than to the casual observer seems possible, and therefore we ought to hesitate to pronounce as impossible the possession of such knowledge when it it claimed with a fair show of reason."

The Campbell case was reviewed in the later case of Stotler v. Railroad, 200 Mo. 107, 126, 98 S. W. 509. We there said:

"In the Campbell case, supra, a witness was allowed to testify over the objection of defendant that a car ran at twelve to fifteen miles an hour. The witness did not see the car. He was standing on his front porch about 125 feet from the accident, with a house intervening, and was permitted to give his opinion on the speed of the car, judged of alone from its *noise*. This court, through VALLIANT, J., reasoned out the conclusion that the evidence should have been excluded. But, in coming to this conclusion, care was taken not to say that the eye alone could convey an impression of speed to the mind; for it was not argued that a witness in a given instance might not be shown to have such unusual technical knowledge from experience and study as would entitle him to a speed opinion based only on the sound of a moving car. All that was said was that the witness under discussion was not shown to possess such qualifications."

We cannot say, as a matter of law, that witness Copeland's training and experience as an automobile mechanic, especially with Chevrolet cars, did not qualify him to judge the speed of a Chevrolet car by the sound or hum of the motor.

Appellant further contends that the court erred in refusing to permit her to prove, as an element of damages, the reasonable and necessary cost of medical and surgical treatment of one of her minor children for a condition existing at the time of her husband's death.

This alleged error is not preserved in the motion for new trial, hence, it is not here for review. [Hablutzel v. Home Life Insurance Co., 332 Mo. 920, 929, 52 S. W. (2d) 639.]

Since the case must be reversed because of the error in overruling plaintiff's challenge to juror Steininger, the alleged inadequacy of the verdict need not be considered.

The judgment is reversed and cause remanded. All concur.