226 S.W.2d 383 (1950)
MAY
v.
HEXTER et al.
No. 27633.
St. Louis Court of Appeals, Missouri.
January 17, 1950.
Rehearing Denied February 17, 1950.
*384 Orville Richardson, St. Louis, for appellants.
Mollie C. Rickey, St. Louis, Edward H. Tenney, Jr., St. Louis, for respondent.
WOLFE, Commissioner.
This suit was brought against Maud M. Hexter, who operated a restaurant known as the Fairfax Tea Room, and Sidney and Jane Studt, who owned the building in which the restaurant was located. The plaintiff sued for damages arising out of personal injuries that she sustained when she fell down a stairway in the building. She charged joint negligence of all of the defendants and the trial resulted in a verdict for five thousand dollars against Sidney and Jane Studt but in favor of defendant Hexter. The Studts prosecute this appeal from the judgment against them.
The Fairfax Tea Room was in a two-story building on Forsythe Boulevard in Clayton, Missouri. This building, known as the Fairfax House, was built in 1938 and Studts acquired title to it in 1943. There were offices on the second floor which were reached by a common stairway and this floor also had a hallway and lavatory for the use of the tenants. On the ground floor there was the tea room, which occupied two-thirds of the space on the east side of the building, and a drug store on the west side. The tea room also leased and used a like amount of space in the basement. To the rear or north portion of the building was a hallway 53 inches wide with two doors opening into it. The door on one end was from the tea room and the door on the other end was from the drug store. The hall was too short to permit the doors which opened into it to be opened without overlapping to some extent when they were both fully opened at the same time. On the south side of the hallway was a flight of stairs 4 feet wide leading down to the portion of the basement used by the Fairfax Tea Room, the Jantzen Pharmacy and a part where toilets were located.
The plaintiff and a friend named Bernard went to the Fairfax Tea Room for luncheon one afternoon. Mrs. Bernard had patronized the restaurant before but Mrs. May had never been there. There was a front entrance to the place but it appeared to be blocked so Mrs. May and Mrs. Bernard went through the drug *385 store and the door leading to the rear hall. This way was frequently used to enter and leave the tea room and above it in the pharmacy was a sign that said "Fairfax House Restaurant".
The plaintiff followed Mrs. Bernard through the door and as they entered the hall two people were coming in the opposite direction from the tea room. Mrs. May stepped to the south with her back to the stairway to allow these people to pass. She did not see the stairs and did not know they were there and in stepping back she fell down them.
There was a recessed light in the hall ceiling and at the foot of the stairs but plaintiff stated that it was dim inside of the hall and that there was the bright light of the restaurant ahead of her. There was evidence that the light in the ceiling was a 60-watt bulb behind a quarter inch lens and that the stairs were similarly lighted but the bulb lighting them was not visible from the hall.
Other evidence such as that concerning the control of the hallway and the extent of plaintiff's injuries will be discussed as the points in relation to such evidence are considered.
The case was tried and submitted on the theory that the hallway was a perilous trap in that it was so narrow that patrons were forced to walk close to the top of the unguarded stairs descending directly from it, and that it was too poorly lighted to make the danger visible to members of the public using the hallway.
On voir dire examination the plaintiff properly established beyond the hearing of the jury that the Travelers Insurance Company was the insurer of Sidney Studt and Jane Studt and that the company was defending the case. One general question was asked the panel to determine whether any of the members were interested in the insurance company. In response to the question a juror replied: "I feel I ought to state that my husband is a broker and places business with that company; it does not prejudice me in any way." Whereupon counsel for the plaintiff stated: "If the Court please, may I ask that Mrs. Effrein be dismissed." The challenge of the juror was overruled and counsel for the appellants then moved for a mistrial on the grounds that the challenge made was equivalent to telling the jurors that there was insurance in the case. The court denied the motion for a mistrial and it is contended that it erred in so doing.
The very purpose of allowing jurors to be questioned regarding their possible connection with a defending insurance company is to determine the fitness of a juror to serve if such a connection is revealed. Plaintiff's counsel has a right to challenge for cause where such connection is revealed even though the juror stated that she was not prejudiced. Jurors are not the judge of their own qualifications. A situation similar to the one presented was fully discussed by the Missouri Supreme Court in Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, where it was held that an agent for a defending insurance company was incompetent to sit as a juror. It might be further stated that this court has held that the interrogation of jurors relative to their connection with a defending insurer be left to the sound discretion of the trial court with which we will not interfere unless there has been a manifest abuse of discretion. Gerran v. Minor, Mo. App., 192 S.W.2d 57, loc. cit. 61. The ruling of the court in denying the motion for a mistrial was proper.
Appellants claim that the court should have directed a verdict in their favor. They assert that there was no evidence that the landlord maintained control over the hallway in question. The evidence of the landlord's control is of such an abundance that it is difficult to see how such a contention can seriously be raised. There was in evidence the lease by which Mrs. Hexter held occupancy of that part of the building used as a restaurant and this instrument contained the following description of the space leased:
"First Floor and Basement Space, of approximately 3600 square feet, which has been occupied by the Lessor in the operation of the FairFax House Tea Room, which space is exclusive of public Hallways, doorways and the space occupied at *386 present by the Jantzen Pharmacy, all located in the building known as FairFax House and numbered 8027-29 Forsythe Boulevard, Clayton, Missouri." (Emphasis ours.)
In addition to this reservation in the lease of control over the public hallway there was evidence that the Studts furnished and paid for the light used in the hallway and on the stairs, and for the water in the toilet rooms in the basement. These defendants had employed at one time a janitor who cleaned the stairway and Mrs. Hexter testified that the hallway in question was the public hallway mentioned in the lease. The defendants offered evidence to show that the original lease to Mrs. Hexter was entered into by a prior owner before the erection of the building and that according to a blueprint called "Scheme A" a stairway was to have been located within the restaurant and there was to be no hallway. The building was not so built and the "Scheme A" has no bearing upon the subsequent lease by a subsequent owner. The question of control of the hallway was a jury question and the court properly held that there was sufficient evidence that the landlord was in control of the portion of the premises complained of to submit the question to the jury.
Other reasons advanced in support of their contention that a verdict should have been directed for the appellants is that the appellants were under no duty to light the hall and that it was not dangerous for the purpose for which it had been intended, which, according to the appellants, was access to the basement for the first floor tenants. It is maintained that if any danger existed in the hallway it arose because it was misused as an entrance to the restaurant. As to the duty of a landlord in buildings of this kind we have stated in Horvath v. Chestnut Street Realty Co., Mo.App., 144 S.W.2d 165, loc. cit. 168: "The owner of an office building or of an apartment house who retains control over common entrances, stairways, elevators and halls, owes the duty of exercising reasonable care to maintain such places and utilities in a reasonably safe condition for use, and a negligent breach of such duty will give rise to a cause of action in favor of a tenant or invitee for personal injuries resulting from the breach of such duty."
The contention that the hallway was not intended as an entrance to the restaurant is not supported by the evidence. There was a door from it opening into the restaurant and one opening into the drug store. Mrs. Hexter testified that it was frequently used as a passageway from her place to the drug store and vice versa. Hundreds of people used the hall for this purpose, and if it was intended for more restricted use there was nothing to indicate it. To use an entrance for what it is obviously designed is not a misuse and this would be true even though the purpose of constructing the hallway and stairs was solely to allow the tenants entrance to the basement.
A case quite in point and touching upon the duty to light the hallway is Darlington v. Railway Exchange Building, 353 Mo. 569, 183 S.W.2d 101, 106. This was an action against the landlord for failure to light stairs designed to be used as a fire escape. Plaintiff was using them to go from one floor to another when he was injured by a fall. The court stated:
"The next assignment is that in any event appellant was not required by law to keep the stairway lighted, there being no agreement to do so, and no statute or proof of any ordinance so requiring. Two recent decisions are cited on that point. The first, decided by Division 1, is Lambert v. Jones, 339 Mo. 677, 690(5), 98 S.W.2d 752, 760(10, 11). The second case, decided by Division 2, is Barber v. Kellogg, Mo.Sup., 123 S.W.2d 100, 101, 102. These cases are in point, but we think them distinguishable. The common law rule is as they state. But the authorities are divided on the question whether the landlord is bound to light common halls or stairways if they are inherently dangerous in construction, and not merely with respect to some transitory condition. An increasing number of decisions from the various jurisdictions seem to be coming to that view. See also McCloskey v. Salveter & *387 Stewart Inv. Co., 317 Mo. 1156, 1169, 298 S.W. 226, 232(3).
"The Lambert case took that into account, giving two reasons why it was exempting the landlord from responsibility there: (1) He had never assumed the duty of lighting the stairway involved; (2) and there was no evidence showing the stairway was inherently dangerous in construction. And nearly a year later the landlord was held liable in one case for a dangerous condition in a hallway, resulting from insufficient light. Sherman v. Alexander & Sons, Mo.App., St. Louis, 108 S.W.2d 616, 619(1). In the instant case both the conditions mentioned in the Lambert case were absent: The landlord had previously lighted the fire escape stairway; and the stairway was inherently dangerous in construction, because the top of it was only seven inches to the side of the entrance door, and the angle and resistance of the door tended to divert the user in that direction when he could not see at night."
If a place such as the hallway in question, obviously open to public use, is inherently dangerous, it is the duty of the landlord to light it.
The plaintiff contends that it was a perilous trap. She testified that she had never been in the building before. She came in from the bright sunshine as she entered the drug store. Since the plaintiff had no warning of any stairs or narrow hall and saw nothing but the bright lights of the restaurant ahead as she entered, the case falls in the same category as Essenpreiss v. Elliott's Department Store Co., Mo.App., 37 S.W.2d 458, loc. cit. 461. There this court held that a stairway concealed by a table for merchandise with nothing to give plaintiff warning of its presence was a trap or pitfall. Our Supreme Court granted a writ of certiorari in this case and quashed the writ in State ex rel. Elliott's Department Store Co. v. Haid, 330 Mo. 959, 51 S.W.2d 1015. Also in point is Marquis v. Goldberg, Mo.App., 34 S.W.2d 549, and Darlington v. Railway Exchange Building, above cited.
In further urging that a directed verdict should have been given, appellants state that the plaintiff may have been caused to fall by being pushed by one of those leaving the restaurant. The evidence of the plaintiff was that she made room for some one to pass by moving to her right and this caused her to step into the stairway. She stated that the outgoing patrons may have touched or brushed her in passing. It is obvious that when counsel on cross-examination used the word "pushed" that plaintiff accepted it as synonymous with the words "touched" or "brushed", which she had previously mentioned. There is nothing to suggest that the departing patrons were not proceeding in an orderly manner; nor any evidence from which the jury might have concluded that the fall was caused by anything other than the plaintiff stepping from the hall into the stairway. It cannot therefore be said that the cause of plaintiff's fall was left to speculation.
Appellants also maintain that plaintiff was guilty of contributory negligence as a matter of law. We stated upon somewhat similar facts in English v. Sahlender, Mo.App., 47 S.W.2d 150, 154: "The rule for determining the issue of contributory negligence in a case of this character is no different from that which obtains in the ordinary action for negligence, namely, that plaintiff is not to be barred from a recovery by reason of her own conduct on the occasion of her injury, unless reasonable minds could not differ about the conclusion that she failed to exercise the degree of care which ordinarily careful and prudent persons would have exercised under the same or similar circumstances. Kennedy v. Phillips, supra (319 Mo. 573, 5 S.W.2d 33); Burnison v. Souders, 225 Mo.App. 1159, 35 S.W.2d 619; Beckermann v. E. H. Kortkamp Jewelry Co., 175 Mo.App. 279, 157 S.W. 855."
Certainly reasonable minds might differ as to whether or not the plaintiff was negligent in stepping aside to allow others to pass without first looking for dangers not plainly apparent. The question of her negligence was for the jury to determine and it was properly submitted to them.
*388 Appellants complain that the first instruction given at plaintiff's request, dealing with defendants' liability, was erroneous. But the points raised in objection to it are the same points that have been above considered and the instruction when read with the others given presents none of the errors suggested.
It is asserted that the trial court erred in admitting in evidence items of injury not pleaded and in refusing to give withdrawal instructions covering them. The petition alleges: "Plaintiff sustained severe and painful bruises, contusions, and lacerations to her head, eyes, ears, body, ribs, hip, shoulders, back, legs and ankles and that said injuries are permanent;" and further that there were "injuries to her neck and the vertebrae of her neck and her back and the vertebrae of her back and her sacro-iliac joint in that the same were twisted, sprained and dislocated." It is also alleged that she injured her nervous system. A medical witness called upon her behalf stated over the objection of the defendants that plaintiff had an arthritic condition and that it could have been aggravated by the fall she sustained. Touching upon a similar situation we stated in Simon v. S. S. Kresge Co., Mo.App., 103 S.W.2d 523, loc. cit. 527: "We cannot agree with counsel's present contention. Under a general charge of an injury to plaintiff's head, neck, and back, defendant was, of course, to be held to answer for such results as would naturally and necessarily follow from an injury to the head, neck, or back, but an aggravation of a pre-existing arthritic condition would not be such a result. It might indeed be a `natural' result of such an injury if there was in fact a pre-existing arthritic condition, but it would not be a `necessary' result of it, and consequently a special pleading was required, showing the existence of the arthritic condition, if plaintiff expected to attempt to recover for such an item of special damage at the trial."
Like holdings are to be found in the cases of Chambers v. Kennedy, Mo.Sup., 274 S.W. 726, and State ex rel. Grisham v. Allen, 344 Mo. 66, 124 S.W.2d 1080. The evidence should have been excluded as the appellants contend and the items of damages not within the pleadings should have been withdrawn from the consideration of the jury. The court erred in not so doing. For this reason the judgment should be reversed and the case retried. But Section 140 of the New Code, Laws of 1943, p. 353, Mo.R.S.A. § 847.140, provides that no new trial shall be ordered as to issues in which no error appears. The only error present goes to the question of damages and that therefore is the only issue which should be retried.
The Commissioner therefore recommends that the judgment be reversed but that the verdict as to the liability of Sidney and Jane Studt stand in force and that the cause be remanded for a new trial on the question of the amount of damages only.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly reversed and the cause remanded and it is directed that the verdict as to the liability of the defendants Sidney Studt and Jane Studt stand in full force and effect and that a new trial be had on the question of damages only.
ANDERSON, P. J., and HUGHES and McCULLEN, J., concur.