Ella D. KENDALL, Appellant,

v.

The PRUDENTIAL LIFE INSURANCE COMPANY ·OF AMERICA, a corporation, Respondent.

No. 22792.

Kansas City Court of Appeals.

Missouri.

Nov. 3, 1958.

Melvin J. Duvall, Whitney W. Potter, St. Joseph, for appellant.

Henry G. Eager, Kansas City, John C. Landis, III, St. Joseph, Ralph E. Fain, Houston, Tex., Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Landis & Landis, St. Joseph, of counsel, for respondent.

MAUGHMER, Commissioner.

This lawsuit arises out of a group life insurance policy issued by the Prudential Life Insurance Company of America, defendant, to one William D. Coffman. The policy was in full force and effect at the time of insured's death. It provided straight life insurance in the principal sum of $2,000, which has been fully paid, and about which there is no controversy. The policy provided for payment of an additional $2,000 if the insured "sustains bodily injuries effected solely through external, violent and accidental means, and, within ninety days after such injuries are incurred, suffers the loss of life * * *". Defendant denied liability for payment of this double indemnity and plaintiff, the insured's widow, and the named beneficiary brought this suit to collect it. The trial resulted in a jury verdict for defendant. From the judgment for defendant rendered thereon, plaintiff has duly perfected this appeal.

Plaintiff presents only one assignment of error. She says the trial court erred in overruling her challenge for cause of four jurors on the voir dire examination. She also asserts that this issue was fully presentable on appeal through a partial transcript, but that defendant required a complete transcript (321 additional pages). She moves that the cost therefor and the cost of "unnecessary exhibits" included in the transcript be taxed against defendant. Defendant asserts (1) the action of the trial court in permitting the challenged jurors to remain on the panel was a proper exercise of judicial discretion; (2) plaintiff, by her actions as detailed later, waived her objections and (3) plaintiff failed to make a submissible case and, therefore, since the judgment is in favor of the right party, it should be affirmed on this third point alone.

Section 512.160, subd. 2, V.A.M.S. provides: "No appellate court shall reverse

any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action."

We shall first determine if plaintiff's evidence did make a submissible case. A finding that she did not would dispose of this appeal and make it unnecessary to consider the other assignment of error.

At the time of his death insured was a man 50 years of age. He was employed as maintenance man at a gasoline filling station. On October 15, 1955, an automobile on which he was working, fell off the jack and the insured's hip struck a wall. Plaintiff testified that when her husband arrived home that night there was a slight redness on his right hip and that he was limping slightly. She said that he returned to work the next morning; that about noon she went to his place of business to deliver his lunch; that she found him unable to walk, and that she took him to the General Osteopathic Hospital in St. Joseph. He remained there two weeks under a physician's care. On October 30, 15 days after the alleged accident, he was removed to the Missouri Methodist Hospital, where, two days later, he died. The cause of death as listed on the death certificate was "acute monocytic leukemia". A number of doctors testified in the case. There was complete agreement among them that the cause of leukemia is not known by the medical profession, that it is usually a progressive disease, sometimes referred to as "cancer of the blood", and that it manifests itself through destruction of the red corpuscles and an increase in the white corpuscles. The hospital clinical charts show that the insured's white corpuscle count was 11,700 a few days after hospitalization; that thereafter it rose to 13,500 and finally on October 29, 1955, three days before death, to 358,000. The autopsy report recited "Every organ examined shows extensive leukemia infiltration which in many cases obscures any other pathology that might have been present".

Dr. John L. Mothershead, a general medical practitioner, stated that in general leukemia is a disorder of the blood wherein the white blood cells take on malignant characteristics and grow and multiply very rapidly, spreading out not only through the blood stream but through various parts of the body. He said that the cause of the disease is unknown, although radioactive substances are believed to be predisposing causes. He expressed the belief that any trauma increased the amount of white blood cell response, and that any such increase would aggravate leukemia. A white count of approximately 10,000 is normal.

Dr. Chris Martin Sampson, an M. D. and general practitioner, in response to a hypothetical question which embraced the facts and dates of the accident, insured's 18 year work record, date of death and increase in white corpuscle count, stated that in his opinion insured's death was caused by the accident. On cross-examination he said "The *lukemia* might have killed him but it wouldn't have been stirred up if it hadn't been for the accident". Dr. John G. Swails, M. D., in response to plaintiff's hypothetical question expressed the opinion that insured's death was caused by the accident.

The evidence showed that the insured had worked at common labor regularly for 18 years and on this particular gas station job for approximately one year prior to October 15, 1955; that from and after that date his condition quickly became worse. A few days thereafter he was unable to walk without help, and within a week was unable to walk at all.

The burden was on plaintiff to prove by substantial evidence that insured's death was caused by the accident, Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98, loc cit. 107; Franklin v. Kansas City Public Service Co., 239 Mo. App. 151, 186 S.W.2d 546, 549. It is not the province of this court to weigh the evi-

dence, Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 95; Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, but rather to determine if plaintiff provided substantial evidence that would support a verdict. It was held in Hutton v. Metropolitan St. Ry. Co., 166 Mo.App. 645, 150 S.W. 722, that the testimony of medical experts is a sufficient foundation to authorize recovery of damages for physical injuries though there is no other evidence thereof. However, such medical opinion testimony must have to support it, reasons and testimony which will give it sufficient probative force to be substantial evidence, Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561. Our Supreme Court in Waterous v. Columbian Nat. Life Ins. Co., 353 Mo. 1093, 186 S.W.2d 456, ruled that a physician's testimony, in response to a hypothetical question, that blow which insured was shown to have received upon his head, with reasonable medical certainty, caused insured's paralysis, was substantial evidence that insured's condition was caused by accident, rather than disease and presented a submissible case in action on an accident policy. On page 460 of 186 S.W.2d of the opinion the court said: "We think that with the previous good health of the insured and paralysis developing in such a short space of time after his head was bumped on the furnace pipe and the positive opinion of Dr. Pernoud as to the cause of the insured's condition, there is substantial evidence that the insured's paralysis was the result of the bump on his head".

■ We believe and rule that considering the previous good health of insured, the sharp increase in his white corpuscle count, the onset and quick disability in the insured's injured leg and death coming in such a short space of time after the accident, and the medical opinions of plaintiff's doctors as to the cause of insured's condition, there is substantial evidence that insured's death was the result of the accident and that the action of the trial court in submitting to the jury was correct. We believe further, however, that defendant, in support of its position that no submissible case was made, was justified in insisting that the complete transcript be presented on appeal so that this issue could be completely explored. We, therefore, deny plaintiff's special motion to tax a portion of these costs against defendant.

Upon voir dire examination four members of the jury panel stated they were policyholders with defendant insurance company which, it was admitted, is a mutual company and owned by its policyholders. These prospective jurors were not asked (1) if their policies shared in dividends or (2) if the fact they were policyholders would affect their impartiality as jurors. No further evidence on either of these points was offered. Plaintiff challenged these four jurors for cause. The court overruled the challenge and plaintiff says erred in doing so.

It seems that when the appointed hour arrived for commencement of this trial, Judge Kimberlin of Division 1, Buchanan County, where the case was lodged, was concluding another trial. Possibly at his request or by agreement of counsel, certainly without any objection, Judge Smith of Division 3 sat during the qualification of the jury. It was he who overruled the challenges. Neither side peremptorily eliminated either of those four prospective jurors and all four were among the twelve sworn to try the cause. After some evidence had been heard but before completion, one juror became ill. By agreement of the parties through their attorneys, the trial was continued with eleven jurors. The defendant had a verdict signed by nine of the eleven jurors and including all four who were defendant company policyholders. Plaintiff first raised this question before Judge Kimberlin in her motion for new trial. The record recites that the jury had been impanelled before Judge Smith.

■ Defendant contends that plaintiff waived her objection to these four jurors by (1) going to trial before Judge Kimberlin without formally presenting the ques-

tion to him and (2) by consenting to completion of the trial before only eleven jurors. Defendant has cited us to no case so holding. We hold that plaintiff has not waived the point, and that it is properly preserved for review.

Under the common law, a juror to be qualified, was required to be wholly disinterested. In Eberle v. Board, etc., of St. Louis Public Schools, 11 Mo. 247, 261, it was ruled that residents of defendant school district were disqualified as jurors. The court said: "It is a clear principle that jurors must be *omne exceptione majores,* free from every objection and wholly disinterested. The inclination to relax the rule as to questions of interest as to witnesses, has never been manifested as to jurors. Although the Legislature has made the inhabitants of a county competent jurors in suits in which the county is a party, it has not relaxed the rule as to corporations".

By statute the Legislature has now removed the disqualification from residents of a city or county where the city or county is party litigant, Section 494.040, V.A.M.S. We find the following general statutory enactments as to qualifications of jurors: Section 494.010, V.A.M.S.: "Every juror, grand and petit, shall be a citizen of the state, resident of the county, sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified." The words "otherwise qualified" as used in this section have been interpreted to mean "impartial", Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711. Section 494.190, V.A.M.S. provides: "No witness or person summoned as a witness in any civil cause, and no person who has formed or expressed an opinion concerning the matter, or any material fact in controversy in any such cause, which may influence the judgment of such person, or who is of kin to either party to any such cause within the fourth degree of consanguinity or affinity, shall be sworn as a juror in the same cause."

In considering juror qualifications and in interpreting legislation thereon, our courts have pronounced three general principles clearly and with no dissent. First, the fact that the section enumerates certain grounds for disqualification does not exclude other grounds, and if for any reason, statutory or otherwise, a venireman is not in a position to enter the jury box with an open mind, free from bias or prejudice, he is not a competent juror, Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, 103 A.L.R. 505; Barb v. Farmers Insurance Exchange, Mo., 281 S.W.2d 297. Second, a trial judge is vested with broad discretion in determining qualification of veniremen to act as jurors although his action is reviewable, Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578; Cleghorn v. Terminal R. Ass'n of St. Louis, Mo., 289 S.W.2d 13; Grimm v. Gargis, Mo., 303 S.W.2d 43. Third, whether a juror is prejudiced or disqualified is to be determined by the court and not by the juror, Richardson v. Kansas City Rys. Co., 288 Mo. 258, 231 S.W. 938.

On the question of juror challenges for cause our Missouri Supreme Court in 1905 gave us a rule in keeping with the spirit of the Constitution and judicial fairness. In Glasgow v. Metropolitan St. Ry. Co., 191 Mo. 347, 89 S.W. 915, 917, the court said: "But the authority of the court in such case is not limited to a decision of the strict legal question of the qualifications of a juror. It has a discretion to be exercised in the administration of justice in which it may excuse a juror, who although not legally disqualified, yet whose sitting is reasonably liable to fill either party with an apprehension of unfairness. A court in the exercise of that discretion will not attempt to allay an unreasonable suspicion, but when it can remove a cause of reasonable apprehension on the one side without injuring in any degree the rights of the other or giving the other cause for a similar reasonable apprehension, it is the right and duty of the court to do so, * * *."

And in Theobald v. St. Louis Transit Co., 191 Mo. 395, loc. cit. 417–418, 90 S.W. 354, loc. cit. 359, the court said: "The question of the qualification of a juror is a question to be decided by the court, and not one to be decided by a juror himself. It is the prerogative and duty of the trial court to exercise a wise, judicial discretion in this regard, and the conclusion of the court should rest upon the facts stated by the juror with reference to his state of mind, and should not be allowed to depend upon the conclusions of the juror as to whether or not he could or would divest himself of a prejudice he admitted existed in his mind. * * * It is proper to examine a juror as to the nature, character, and cause of his prejudice or bias, but it is not proper to permit the juror, who admits the existence in his mind of such prejudice or bias, to determine whether or not he can or cannot, under his oath, render an impartial verdict. Such a course permits the juror to be the judge of his qualifications, instead of requiring the court to pass upon them as questions of fact. It is altogether a mistaken idea that the ruling of the trial court on such questions is conclusive and not subject to review. In some cases it has been loosely said that the ruling of the court on such questions is like the ruling of the trial court in law cases, and that, where there is any evidence to support the ruling, an appellate court will not review the same. Such questions generally arise only in cases at law. It is the discretion exercised by the trial judge which is the subject of review. In approaching the decision of that question an appellate court is always guided by the same rule that obtains with reference to the review of discretionary judicial acts of inferior tribunals. Great deference is paid to the finding of a trial judge, but that finding is not conclusive, * * *."

In State v. Mace, 262 Mo. 143, loc. cit. 154, 170 S.W. 1105, 1109, Judge Faris, then of our Supreme Court, commented as follows: "In passing we take the opportunity to say that the small trouble of telling an incompetent juror to stand aside and of calling, * * * a competent one to take his place, ought so lightly to weigh against the hazard to the case of refusing to take this step, and against the ofttimes outrageous unfairness to a defendant on trial mayhap for his life, that ordinarily neither the court nisi nor the state's counsel out of the abundance of caution and impartiality should ever take so momentous a chance. * * * With the world absolutely filled with competent, unbiased, and unprejudiced jurors, error in this behalf is usually gratuitous and unnecessary, * *."

In Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, loc. cit. 585–586, the court speaking through Hollingsworth, J., reversed and remanded for failure to sustain a challenge for cause. This opinion also holds squarely that the error is not cured if the objector eliminates the juror by peremptory challenge and that in a civil case a qualified panel of 18 jurors is required. We quote from the opinion: "There are cases in this State holding that even though the qualifications of a juror were highly questionable, yet if the objecting party struck his name from the qualified list, and an unanimous verdict was reached by the jury finally selected, and no prejudice was shown, the error of the trial court would not be deemed prejudicial. (See cases cited). But it is apparent that the opinions in those cases overlooked certain fundamental principles of the right of trial by jury as contemplated by our Constitution. The better reasoned cases hold: 'The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, "the right to a fair and impartial jury." (Citing case). As this court also said, in that case, "to prescribe whatever will tend to procure the impartiality of jurors in the trial of cases, is not only within the competency of the Legislature, but is one of its highest duties." Certainly it is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to

accomplish that purpose by enforcing the qualifications prescribed by statute. Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men.' (See cases cited). The better reasoned cases also hold that where·a challenge for cause is erroneously overruled and the challenging party is compelled to use one of the three peremptory challenges allowed him by law to get rid of him, it cannot be said that because the verdict of the jury finally empanelled was unanimous against him, he was not prejudiced". (See cases cited). ·

In Murphy v. Cole, 338 Mo. 13, 88 S.W. 2d 1023, loc. cit. 1024, 103 A.L.R. 505, the court spoke this way: "If for any reason, whether·statutory or not, a prospective juror is not in a position to enter the jury box with an open mind, free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror. In the light of this rule, did the fact that Juror Steininger was local agent for the insurance company in question render him incompetent as juror in this cause? We think it did. Both parties to a lawsuit ·are entitled to a panel of eighteen qualified men from which to select a jury. (See cases cited). A juror in the employ of one of the parties to a cause might honestly believe he had no bias or prejudice one way or the other, yet it is a matter of common knowledge that the frailties of human nature would cause him, perhaps unconsciously, to view the cause through the spectacles of his employer."

In Edmonds v. Modern Woodmen of America, 125 Mo.App. 214, 102 S.W. 601, 602, this court ruled that members of defendant benefit society were properly disqualified as jurors, saying: "They were members of the defendant society, and as such their assessments would be affected by the result. Interest in litigation, though as remote as that ·of taxpayer who would ·be compelled to contribute his mite to the payment of any judgment obtained against a county or municipality, was sufficient at common law to disqualify a citizen thereof proposed as a juror. We now have a statute qualifying them, but there is no statute changing the rule as to members of an organization like defendant."

In Barb v. Farmers Insurance Exchange, 281 S.W.2d 297, loc. cit. 301, four veniremen were policyholders of the defendant, a mutual insurance company. The action of the trial court holding them disqualified was approved. We quote from that opinion: "Initially, we are confronted with defendant-appellant Exchange's contention that the trial court erred in sustaining plaintiff's challenge for cause as to four veniremen, it being contended by Exchange that these veniremen were competent to serve as jurors, and further that the challenge for cause came too late. On voir dire it was disclosed that these four veniremen were policyholders in Exchange. Three said this fact would not affect them or influence their feeling for or against Exchange. The fourth was not asked that specific question. The trial court sustained plaintiff's challenge for cause as to these four veniremen on the theory that Exchange, a reciprocal insurance company, was a 'mutual' company, and that these veniremen were in fact subscribers and stockholders and, consequently, had pecuniary interests in the case. * * *. In the case of Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, 103 A.L.R. 505, it was written that this statute is not all-inclusive: The fact that the statute enumerates certain grounds of disqualification does not exclude other grounds, and if for any reason, whether statutory or not, a venireman is not in a position to enter the jury box with an open mind free from bias or prejudice in favor of or against either party to the cause, and decide the case upon

the evidence adduced and the law as contained in the court's instructions, he is not a competent juror. Murphy v. Cole, supra; Edmonds v. Modern Woodmen of America, 125 Mo.App. 214, 102 S.W. 601. See also McCollum v. Shubert, Mo.App., 185 S.W.2d 48. In the instant case, it was not made unequivocally manifest that Exchange is a mutual company, nor was it clear that the challenged veniremen had any interest in the case which would disqualify them as jurors as a matter of law. Now we do not say it would have been error to overrule plaintiff's challenge for cause. Nevertheless, the record shows the trial court was earnestly and successfully acting in its discretion in qualifying eighteen veniremen competent to act, if selected as jurors, in fairly and impartially trying the issues of the case. We hold the trial court did not err or abuse its discretion in sustaining plaintiff's challenge."

On this general question it is interesting to consider the comment by the Supreme Court of the United States in Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 264, 53 L.Ed. 465. There the juror was a druggist and clerk in charge of a subpostal station. The court ruled him disqualified as a juror and said: "A jury composed of government employees where the government was a party to the case on trial would not in the least conduce to respect for, or belief in, the fairness of the system of trial by jury. To maintain that system in the respect and affection of the citizens of this country it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead, on that account, to any doubt on that subject."

The right to a jury trial, by an impartial jury, composed of individuals free from bias and prejudice, has ever been one of the cornerstones in our system of government and jurisprudence. In the Crawford case, ante, the highest court in the land expressed the view that our procedure in the selection of jurors should be such as would be conducive toward respect for and belief in, the fairness of the jury system.

The highest court of Missouri in Murphy v. Cole, ante, held defendant insurer's local agent was disqualified as a juror and reversed the trial court. In Moore v. Middlewest Freightways, Inc., ante, the juror thought he would not be prejudiced but had expressed a feeling against "the big fellow". [266 S.W.2d 578, 586.] A reversal followed failure to sustain a challenge for cause. In the Edmonds and Barb cases, quoted from herein, the trial court's action in holding members of defendant Modern Woodmen Society, and policyholders of defendant Farmers Insurance Exchange to be disqualified as jurors was affirmed.

■ Counsel for defendant points out that while defendant, the Prudential Insurance Company of America is a mutual company, it is the largest in the world and the interest one policyholder has in the result of a $2,000 lawsuit is so infinitesimal that there could be no prejudice, or unfairness or suspicion thereof. Can we in reason have one rule for a small mutual company and a different rule for the largest company? Shall we hold as a matter of law, that members of a mutual assessment company like the Woodmen, or policyholders in the Farmers Insurance Exchange are prejudiced and disqualified while Prudential policyholders are both impartial and qualified? Shall appellate courts, under the cloak of bowing to the discretion of the trial judge, approve his action in qualifying such jurors in one case and in disqualifying them in another? Our answer is "No" to each of these three questions.

We believe it is the duty of the courts to make our system of selecting jurors respected and free from prejudice or the suspicion thereof. It is quite unnecessary to leave jurors on the panel when the facts reveal a relationship which might result in bias and prejudice such as that of a

policyholder in a defendant mutual insurance company.

Because of the failure of the trial court to sustain the challenges for cause, the judgment is reversed and the cause remanded for new trial.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.