**FIDELITY STATE BANK AND TRUST COMPANY, Plaintiff-Appellant,**

v.

**T. H. GIBSON, Defendant-Respondent.**

**No. 28874.**

Missouri Court of Appeals,
Kansas City District,
Division One.

July 3, 1978.

J. R. Fritz, Lamm, Barnett, Crawford & Fritz, Sedalia, for plaintiff-appellant.

James T. Buckley, Brown, Buckley & Cassing, Sedalia, for defendant-respondent.

Before SHANGLER, P. J., WASSERSTROM, J., and CLARK and HANNA, Special Judges.

FOREST W. HANNA, Special Judge.

The single issue for resolution is the trial court's refusal to allow in evidence a note executed by William O. Lemons on June 25, 1971, to the plaintiff bank in the amount of $29,198.37. More specifically, we must determine whether that particular note should have been pleaded by the plaintiff as "special damages."

On April 21, 1971, William O. Lemons and his partner, Charles Allee, went to the plaintiff bank in Topeka, Kansas and obtained a loan of $125,000 for their partnership in order to finance cattle purchases. The bank gave them a pad of bill of sale drafts and on the 26th of April one of those bill of sale drafts was drawn by Lemons on the plaintiff bank in the amount of $12,-661.60 payable to the defendant Gibson. Gibson deposited the draft in his account and the plaintiff bank paid the draft. The draft describes sixty-eight head of Hereford steers sold by defendant Gibson. After the partnership had finished buying cattle, the partners returned to the bank and on the 24th of June, 1975, signed a promissory note in the amount of $107,641.88. They also signed a security agreement on the same date describing 702 head of cattle securing the note and other debts.

Gibson never delivered the sixty-eight steers to Lemons, a fact that resulted in his conviction in the United States District Court for the Western District of Missouri. Approximately a month after the signing of the note and security agreement the plaintiff bank became aware of the shortage of the cattle security. Under the security agreement the bank foreclosed, sold the cattle, leaving a net excess of proceeds over the balance due of $7,298.34. Half of that excess was paid to Allee and the other half was applied to another and separate debt incurred by Lemons at the plaintiff bank. The security agreement signed by Lemons and Allee on the 24th of June had a provi-

sion that the security (which included sixty-eight steers) would secure not only the $107,641.88 note but also provided " . . . and in addition . . . any and all other amounts as shall in any manner be due from debtor or secured party . . . ." The day after the $107,641.88 note and security agreement were executed between the bank and Lemons and Allee, Lemons went to the bank and executed a promissory note in his own name in the amount of $29,198.37. This transaction is separate and distinct from the one the day before. It is this note that the trial judge refused to allow in evidence.

Pursuant to the provisions of the original security agreement, plaintiff claims that the sixty-eight head of cattle not only secured the original loan of $107,641.88 but the subsequent note executed by Lemons separately in the amount of $29,198.37. Plaintiff claims that this separate debt of Lemons should have been admitted to show damages to the bank because of the fraud Gibson committed when he deprived the bank of sixty-eight head of cattle. The plaintiff cites the Uniform Commercial Code, Section 400.9–204(5) which provides " . . . obligations covered by a security agreement may include future advances."

The defendant does not challenge the relevancy of the $29,198.37 note, but did repeatedly object to its admission in evidence because it was outside the scope of the pleadings and was a claim for special damages as opposed to general damages.

This case was tried on plaintiff's amended petition which alleges that the plaintiff bank and the partners Allee and Lemons entered into an agreement to purchase cattle and that the partners were issued bill of sale drafts, one of which was payable to defendant Gibson in the amount of $12,-661.60 and that it was secured by sixty-eight Hereford steers and that Gibson received that money but did not deliver the steers as required. It further alleges that Lemons had signed a security agreement by which the cattle purchased would become security for the payment of certain sums of money which included the draft in question,

that the plaintiff discovered the loss, sold the cattle and because of the wrong committed by the defendant Gibson the plaintiff was damaged in the sum of $12,661.60. The bill of sale draft was attached to the petition and made a part of it. Nowhere in the amended petition is there any reference, directly or indirectly, to the $29,198.37 note executed by Lemons in his own name to the plaintiff bank on the 25th of June. There is nothing in the amended petition indicating that Gibson's fraudulent actions caused the bank to lose security on another, separate transaction that it had with Lemons.

There was not a hint of this damage until midway through the trial when the plaintiff offered the testimony.

The Court held a hearing outside of the jury and sustained the defendant's objection. At no time did plaintiff make any motion to amend the petition to include this element of damage.

Supreme Court Rule 55.19 requires that "when items of special damage are claimed, they shall be specifically stated." This Rule states the well-settled principle of law that where the plaintiff intends to make a claim for special damages by which is meant damages of such a character as would not of necessity have followed the particular injury, they must be specially pleaded in the petition in order that the defendant may have notice thereof to meet the issue upon the trial. *Simon v. S. S. Kresge Co.,* 103 S.W.2d 523 (Mo.App.1937); 22 Am.Jur.2d, Damages, § 272. Those damages which the law would impute as natural, necessary and the logical consequence of defendant's wrongful act are general in nature and do not need to be specifically pleaded. They are recoverable under a claim of general damages. *Johnson v. Flex-O-Lite Mfg. Corp.,* 314 S.W.2d 75 (Mo.1958).

The defendant had the right to have notice of this loss and be prepared to meet it. It makes no difference whether the damages are the result of a breach of contract or tort. Any attempt to introduce evidence of special damages when only a general averment is made is a fatal variance between the pleadings and the proof and not

**576**

admissible. *W. C. Hardesty Co. v. Schaefer,* 139 S.W.2d 1031, 1035 (Mo.App.1940).

In the instant case it was incumbent upon the plaintiff to plead this damage because it was not a loss necessarily resulting from defendant's wrongful conduct. *Coleman v. Ziegler,* 226 S.W.2d 388 (Mo.App.1950); *Parsons Const. Co. v. Missouri Public Service Co.,* 425 S.W.2d 166 (Mo.1968).

The loss of security to the plaintiff bank on the transaction as evidenced by the offered testimony may very well have been a logical loss but not necessarily one to be expected. We do not say that plaintiff would not have been entitled to have the jury consider that loss, only that they should not have been permitted to have that evidence without it having been alleged in the petition as an element of damage. Therefore, the judgment of the court entered is hereby affirmed.

All concur.