question. from the .one concerning where the injury was done him."

A like ruling was made in. Vancouver S. S. Co. v. Rice, 288 U.S. 445, 53 S.Ct. 420, 421, 77 L.Ed. 885. There a person was injured on a vessel in navigable waters. The person died in the State of Oregon. A suit was filed in an Oregon court for the wrongful death as provided in an Oregon statute. The Supreme Court of the United States held that "The right to recover for death depends upon the law of the place of the act or omission that caused it and not upon that of the place where death occurred." See also Campbell v. Rio Grande Western R. Co., 16 Utah 346, 52 P. 594; Konold v. Rio Grande W. Ry. Co., 16 Utah 151, 51 P. 256; Royal Indemnity Co. v. Atchison, T. & S. F. Ry. Co., 272 App.Div. 246, 70 N.Y.S.2d 697, loc. cit. 700, 701 (2, 3).

In Anderson v. Linton, 7 Cir., 178 F.2d 304, loc. cit. 308 [2], the court said: "True it is that the alleged negligent fabrication and construction of the trailer hitch described in the complaint occurred in Illinois and the case at bar was filed in that State, but the injuries to the plaintiff and her husband were sustained in Iowa. The locus delicti is the place where the accident occurred, and where the injuries were inflicted, as distinguished from the place of the incipient negligence, 25 C.J.S., Death, § 28, p. 1098; Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 133 A.L.R. 255."

In criminal cases, the venue is in the place where the wrong was committed. For example: Suppose the defendants in this case had been guilty of such a degree of negligence as would justify a prosecution for manslaughter. The venue of the crime would be in Pulaski County and not in the City of St. Louis, Missouri. No manslaughter prosecution would be maintained unless the victim died. It would be immaterial where the victim died; the venue would be in the county where the wrong was inflicted.

In construing a statute, the object to be accomplished must be considered. 82 C.J.S., Statutes, § 323, p. 593, and cases

there cited. The purpose of the statute in question was to fix venue in the State of Missouri for the trial of cases based on negligent operation of motor vehicles on the highways of this state by nonresidents of Missouri. See Sections 506.200–506.320 RSMo 1949, V.A.M.S. That being the purpose of the statute, it necessarily follows that the proper venue of the suit filed by William and Genevieve Sinders for the wrongful death of their daughter is in the county where the alleged wrong was done. We rule that the venue of this case under the admitted facts lies in Pulaski County, Missouri.

Our preliminary rule in prohibition is made absolute.

It is so ordered.

All concur.

Marie BARB, Plaintiff-Respondent,

v.

FARMERS INSURANCE EXCHANGE,
Defendant-Appellant,

and

Insurance Exchange Building, Inc.,
Defendant-Appellant.

No. 44487.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Roy F. Carter, Sprinkle, Knowles & Carter, Kansas City, for defendant-appellant.

Clyde J. Linde, ·Robert B. Langworthy, Billy S. Sparks, Kansas City, for appellant and cross-respondent Insurance Exchange Building, Inc., Langworthy, Matz & Linde, Kansas City, of counsel.

Leo Spalding; Guy W. Green, Sam Mandell, Kansas City, for plaintiff-respondent. Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

VAN OSDOL, Commissioner.

In this action for personal injuries plaintiff had a verdict awarding $15,000 damages against defendant Farmers Insurance Exchange and defendant Insurance Exchange Building, Inc. Plaintiff had charged general negligence as against both defendants. Defendant Insurance Exchange Building also had a verdict for $15,000 on its cross-claim for indemnity against defendant Farmers Insurance Exchange. These awards were respectively reduced to $10,-

000 by remittitur in the trial court, and judgments were accordingly rendered. Both defendants have appealed.

Defendant cross-claimant Insurance Exchange Building (hereinafter sometimes referred to as "Building") had leased a part of the basement of the Insurance Exchange Building at 10th Street and Baltimore Avenue, Kansas City, to defendant Farmers Insurance Exchange (hereinafter sometimes referred to as "Exchange"). There was an east-west passageway in the basement of the building adjacent to but not included in the area of the basement leased to Exchange. The passageway was provided by Building to be used by the public, including the patrons and employees of Building's various tenants. The passageway connected with a tunnel under Baltimore Avenue, the tunnel affording passage under Baltimore to and from the Dwight Building. Exchange stacked supplies in this passageway, the supplies consisting of stationery contained in cardboard boxes or cartons. The boxes were stacked along the south side of the passageway between two pilasters or columns. Plaintiff testified she had seen the boxes every morning "I went through there." They had been there a "couple of weeks maybe." Defendants introduced evidence tending to show that, although boxes of supplies had been stacked by Exchange in the passageway from time to time, the boxes which fell, struck and injured plaintiff had been placed in the passageway on the day preceding that of plaintiff's injury.

At about seven-thirty in the morning of July 2, 1948, plaintiff, an employee of one of Building's tenants, was walking through the passageway. She was intending to go on through the tunnel under Baltimore to the Dwight Building. Plaintiff was struck by falling boxes and was injured.

Plaintiff had alleged,

"3. Plaintiff further states that the defendant, Farmers Insurance Exchange had been and at the time complained of was using part of the basement of said building adjoining and bordering the passageway to said tunnel as a place to keep its supplies, records, and equipment including large paper or cardboard boxes or cartons containing its property, records and supplies; that said boxes and cartons were filled with such material and were stacked on top of each other along said passageway and were so stacked and maintained that if they fell over they would likely strike against and fall upon and injure persons using said passageway.

"4. Plaintiff further states that defendant, Insurance Exchange Building, Inc., caused, allowed and permitted its codefendant tenant to stack and maintain and keep such boxes and cartons in and adjoining said passageway and at all times mentioned herein and prior thereto said defendants had exclusive possession, control, management and supervision over said passageway and the floor space and the boxes and cartons in the basement of said building."

Defendant Building in its cross-claim against Exchange alleged,

"2. That under a lease entered into by and between this defendant and defendant Farmers Insurance Exchange * * *, whereby this defendant leased to defendant Farmers Insurance Exchange certain portions of the said Insurance Exchange Building * * *, defendant Farmers Insurance Exchange agreed to keep the hallways and passages of the said building free and clear of obstructions, and agreed not to permit anything which would injure any other tenants of said building, and agreed to keep said building and premises in a good state of preservation and cleanliness.

"3. This defendant states that whatever, if any, liability this defendant has to plaintiff on plaintiff's * * * Petition * * *, and whatever, if any, judgment is entered for plaintiff on her * * * Petition * * *, the same, if any, will have been incurred by this defendant by reason of the carelessness

and negligence of defendant Farmers Insurance Exchange and, further, that defendant Farmers Insurance Exchange breached its duties under said lease and is thereby obligated to protect and hold harmless this defendant from said liability and judgment, if any, to plaintiff."

It was stipulated in the lease between defendant Building, lessor, and defendant Exchange, lessee, as follows,

"1. The sidewalks, entries, passages, halls, elevators and stairways shall be under the exclusive control of the lessor, and shall not be obstructed by any of the tenants, or used by them for any other purpose than for ingress and egress to and from their respective offices or places of business. * * *

"4. No tenant shall do or permit anything to be done in or upon the demised premises, or bring, or keep anything therein which will in any way * * * obstruct or interfere with the rights of other tenants therein, or in any other way injure or annoy them, * * *."

 Initially, we are confronted with defendant-appellant Exchange's contention that the trial court erred in sustaining plaintiff's challenge for cause as to four veniremen, it being contended by Exchange that these veniremen were competent to serve as jurors, and further that the challenge for cause came too late. On voir dire it was disclosed that these four veniremen were policyholders in Exchange. Three said this fact would not affect them or influence their feeling for or against Exchange. The fourth was not asked that specific question. The trial court sustained plaintiff's challenge for cause as to these four veniremen on the theory that Exchange, a reciprocal insurance company, was a "mutual" company, and that these veniremen were in fact subscribers and stockholders and, consequently, had pecuniary interests in the case. It is provided by Section 494.190 RSMo 1949, V.A.M.S., that no "witness or person summoned as a witness in any civil cause,

and no person who has formed or expressed an opinion concerning the matter, or any material fact in controversy in any such cause, which may influence the judgment of such person, or who is of kin to either party to any such cause within the fourth degree of consanquinity or affinity, shall be sworn as a juror in the same cause." In the case of Murphy v. Cole, 338 Mo. 13, 88 S.W.2d 1023, 103 A.L.R. 505, it was written that this statute is not all-inclusive. The fact that the statute enumerates certain grounds of disqualification does not exclude other grounds, and if for any reason, whether statutory or not, a venireman is not in a position to enter the jury box with an open mind free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror. Murphy v. Cole, supra; Edmonds v. Modern Woodmen of America, 125 Mo. App. 214, 102 S.W. 601. See also McCollum v. Shubert, Mo.App., 185 S.W.2d 48. In the instant case, it was not made unequivocally manifest that Exchange is a mutual company, nor was it clear that the challenged veniremen had any interest in the case which would disqualify them as jurors as a matter of law. Now we do not say it would have been error to overrule plaintiff's challenge for cause. Nevertheless, the record shows the trial court was earnestly and successfully acting in its discretion in qualifying eighteen veniremen competent to act, if selected as jurors, in fairly and impartially trying the issues of the case. We hold the trial court did not err or abuse its discretion in sustaining plaintiff's challenge. And we are of the opinion that plaintiff's challenge for cause did not come too late. The challenge was made before the jury was sworn and was not untimely. Massmann v. Kansas City Public Service Co., Mo.Sup., 119 S.W.2d 833.

Defendant-appellant Exchange further contends the verdict was influenced or was the result of the misconduct of jurors Smith and Counselman in that these jurors as veniremen on voir dire examination failed to disclose that they or their relatives had

been involved in accidents and had made claims therefor. On voir dire, counsel had inquired of the panel as to any claims any venireman had theretofore had against others for personal injury or property damage, and inquiry was also made as to the claims of any venireman's relatives. Veniremen Smith and Counselman remained silent.

■■ Affidavits were filed, and evidence was introduced in support and in refutation of defendant Exchange's assignments in its motion for a new trial relating to the asserted misconduct of veniremen Smith and Counselman. Our careful examination of the testimony indicates that these veniremen did not precisely understand what it was counsel meant by the word "claim," or had for the moment forgotten the accidents in which they had been involved. According to their testimony, neither of the veniremen had actually asserted a claim, formal or otherwise, although both of the veniremen had experienced motor-vehicular accidents, and one and a relative of the other had been paid sums in settlement, voluntary on the part of the other parties involved in the accidents. In this case the trial court overruled defendant Exchange's motion for a new trial, and we believe the trial court did not abuse its discretion in overruling the motion. Where it is shown that matters which might establish prejudice or work a disqualification were actually gone into on voir dire and false answers by veniremen were given or deception otherwise practised and the venireman is selected as a juror, there could be no fair and impartial trial by jury as contemplated by fundamental law. Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459; Moore v. Middlewest Freightways Inc., Mo.Sup., 266 S.W.2d 578; Woodworth v. Kansas City Public Service Co., Mo.Sup., 274 S.W.2d 264. But here the trial court was justified in believing there was no intentional concealment, misrepresentation or deception and prejudice on the part of the two veniremen-jurors. We hold the trial court's action in overruling the motion was within the exercise of its sound discretionary power. In the Piehler case, cited by defendant-ap-

pellant Exchange, the only reasonable inference from the record was that the named juror had intentionally concealed the fact that he had in 1943 and 1944 a claim against the defendant in that case. And in the case of Girratono v. Kansas City Public Service Co., Mo.Sup., 272 S.W.2d 278, also cited by defendant-appellant Exchange, the trial court sustained defendant's motion for a new trial. The evidence in that case justified the conclusion that the named juror intentionally withheld information concerning two prior actions for damages.

It is contended by defendant-appellant Building that the trial court erred in refusing to direct a verdict for Building. It is said the doctrine of res ipsa loquitur did not and cannot apply to defendant Building. It is urged (a) the doctrine is inapplicable to Building because the basic reason for the doctrine is not found in this case, that is, the conditions surrounding the occurrence cannot reasonably be found to have been peculiarly within the knowledge of Building; (b) the doctrine is inapplicable to Building because the instrumentality involved in the occurrence was not in the exclusive control of Building; (c) the doctrine should not be applied against each of two defendants where one defendant did not have actual control of the instrumentality, and there was no basis for imposing vicarious liability; and (d) the doctrine should not be applied against defendant Building since plaintiff would thus be placed in a more advantageous position than if she had actually proved the boxes had been negligently stacked by defendant Exchange.

In this case it was admitted that the passageway where plaintiff was injured was provided by defendant Building for the use of its tenants and their employees, and the public; it was admitted that the boxes which fell were stacked at a place which had not been leased to defendant Exchange, but were in the area under the control of Building; it was admitted the boxes belonged to defendant Exchange, and that they were stacked in the passageway by employees of Exchange. And, in this con-

nection, we have also noticed the contract of lease in which defendant Building had reserved exclusive control of entries, passages and halls.

In McCloskey v. Koplar, 329 Mo. 527; 46 S.W.2d 557, 92 A.L.R. 641, it was said that in general and on principle the doctrine of res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. And it was further said in the McCloskey case that the requirement that the instrumentality be under the management and control of defendant does not mean, or is not limited to, actual physical control, but refers to the right of control at the time the negligence was committed.

■ Although Exchange's conduct in placing or storing the boxes in the passageway carried with it a duty to exercise due care for the safety of those using the passageway including plaintiff, Building's control of the passageway as lessor or landlord also fixed upon Building the duty to exercise ordinary care to make the premises (where the boxes were stacked) reasonably safe for its invitees, including plaintiff; and Building had a duty to exercise due diligence to remove obstructions or remedy unsafe conditions in the passageway due to the negligence of others of which Building knew or should have known. Morelock v. DeGraw, 234 Mo.App. 303, 112 S.W.2d 126. Both defendants had duties to exercise due care to protect plaintiff from harm, although the duties were founded on different legal relations and factual bases. The case of Hart v. Emery-Bird-Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, cited and greatly relied on by defendant-appellant Building, is not helpful to us here. In the Hart case plaintiff's own evidence showed that customers of defendant's store customarily handled and examined merchandise displayed on display tables. It was

equally as reasonable to infer a customer (over whom defendant had no control), without defendant's knowledge, had caused the pile of awnings to be disarranged and to fall off the table, as to infer negligence of defendant.

■■ In those cases wherein it is said a defendant must have the *exclusive* control of an instrumentality in order for the res ipsa loquitur inference to be available as against such defendant, it is not meant that the inference may not in some cases be permitted against multiple defendants in concurrent control of the instrumentality involved. It is entirely possible that the inference of negligence may arise against each of two or more parties who share control. Prosser on Torts, § 43, at page 299. See now Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, 22 A.L.R.2d 1160; Schroeder v. City and County Sav. Bank of Albany, 293 N.Y. 370, 57 N.E.2d 57; 65 C.J.S., Negligence, § 220(8)bb, at page 1018. And an inference of negligence under the res ipsa loquitur doctrine, which is based solely upon exclusive possession and control of the injuring agency, can only be drawn against the party in the exclusive possession and control of that agency, but that does not exclude a res ipsa loquitur case against another defendant upon different facts. Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065; Walsh v. Southwestern Bell Tel. Co., 331 Mo 118, 52 S.W.2d 839.

■ In the instant case the jury found that Exchange, lessee, owned, controlled and had charge of stacking the boxes of supplies in the passageway. Defendant Building, lessor, also had the power to control the use of the passageway and to cause the removal of the hazard of the boxes stacked by Exchange in the passageway over which passageway Building, as lessor, had reserved or retained exclusive control. Thus it would seem the two defendants, Exchange and Building, were in concurrent control in a legal sense and in a factual sense with incidental duties to plaintiff although their duties were of different factual bases in the circumstances surrounding

the occurrence. Defendant-appellant Building, as stated, has urged the res ipsa loquitur doctrine, if applied to it in this case, would place plaintiff in a mere advantageous position as against defendant Building than if plaintiff had proved specific negligence of defendant Exchange. We can only say that plaintiff was obliged and entitled to rest her case upon the evidence which she could produce and, if such evidence supported the res ipsa loquitur inference of some kind of negligence of defendants, defendants, to whom explanatory proof was more accessible, then had the privilege and the burden of going forward with evidence tending to exculpate either or both of them of their negligence in causing plaintiff's injury. McCloskey v. Koplar, supra. Plaintiff did not know what caused the boxes to fall, and defendants Exchange and Building were, in the circumstances, in positions to have knowledge superior to plaintiff of the human cause of the occurrence. We are of the opinion plaintiff's case was submissible against Building as well as against Exchange on the theory of res ipsa loquitur.

■■■■■ As stipulated in the lease, Exchange was obligated to Building by contract not to keep anything in the passageway which would in any way interfere with or injure other tenants. Defendant-appellant Exchange does not, in its brief, directly assert error in submitting the issue of cross-claimant Building's right of indemnity against Exchange. And we believe in this case Building had a right of action for indemnity in the amount of damages recovered against Building on account of a dangerous condition due to the negligence of Exchange. It is the general rule, where one person has been exposed to liability and compelled to pay damages on account of the negligence of another, the first has a right of action against the other for indemnity where the parties are not *in pari delicto*. In cases where one party creates the condition which causes injury and the other does not join therein but is exposed to liability on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply. Busch & Latta Painting Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614; Hunter v. De Luxe Drive-In Theaters, Mo.App., 257 S.W.2d 255; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R.2d 1399. It has been restated that where a person has become liable with another "for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." Restatement of the Law of Restitution, § 95. In our case there was evidence tending to prove that Building had protested to Exchange from time to time when Building's management had observed Exchange's supplies stacked in the passageway; and, by Building's Instruction No. 14, the jury, in finding for Building (as against Exchange in the same sum as might be awarded to plaintiff and against both defendants), was required to find that the boxes described in evidence "were placed between the columns mentioned in evidence by Farmers Insurance Exchange and that the boxes were so placed without consent of the Insurance Exchange Building, and that it did not acquiesce in the continuation of said condition of said boxes, * * *."

■■■■■ It was proper under Section 509.460 RSMo 1949, V.A.M.S., for Building to state as a cross-claim its claim for indemnity against Exchange. The statute is designed to accommodate and facilitate the whole litigation among the parties growing out of the transaction or occurrence giving rise to the original action, including a claim that the party against whom it is asserted "is or *may be* liable" to the cross-claimant for all or a part of a claim asserted in the same action against the cross-claimant. Gabel-Lockhart Co. v. Gabel, 360 Mo. 518, 229 S.W.2d 539; Vol.

I, Carr, Missouri Civil Procedure, § 210, pp. 541–543. The cross-claim arose out of the transaction or occurrence that is the subject matter of plaintiff's action. The word "transaction" is of broad meaning. It has been defined as including the aggregate of all the circumstances which constitute the foundation for a claim, Grue v. Hensley, 357 Mo. 529, 210 S.W.2d 7, which word "transaction" so defined no doubt included and justified the introduction, in support of Building's cross-claim, the evidence of the contractual relationship of the parties defendant. It was not fatal that Building's cross-claim against Exchange was not a matured demand, or was contingent. Carr, Missouri Civil Procedure; supra; see also State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481.

 Defendants-appellants Exchange and Building contend the amount of the award after remittitur, $10,000, was excessive. In considering this contention we shall examine the evidence tending to show the nature and extent of plaintiff's injury from a standpoint most favorable to plaintiff.

There was evidence tending to show that plaintiff, thirty-three years old at the time of trial, was in excellent health prior to her injury of July 2, 1948. She was in the employ of a brokerage firm with offices in the Insurance Exchange Building. She was a "board marker," that is, she "chalked" market quotations on a large blackboard in the offices of her employer. This work necessitated extending her arm and reaching high above her head in marking the top of the board, and at times she was obliged to get down on her knees in reaching and marking the lower part of the board. She did this without difficulty. She also did her own housework, laundry, took care of a small garden, and raised chickens. She went on hunting and fishing excursions with her husband, and attended dances with him. When she was hit by the falling boxes in the passageway in the basement of the Insurance Exchange Building, July 2d, she was knocked to the cement floor; twenty-five or thirty boxes fell. Eight or ten boxes struck plaintiff. "It knocked me from the left, sort of from an angle like, I sort of went down in a twist with my right leg and hip, then my shoulders sort of back." She was shocked, stunned and dizzy. She immediately developed a severe headache, but went on to work. About ten or eleven o'clock her back started hurting. She continued working, although she was nervous and in pain continuously. She had a vacation "coming up" in two weeks. She rested in bed throughout her two-week vacation. She didn't go to the doctor, partly because of the expense, and she kept thinking she would improve. But when she returned to work after her vacation she asked to be put on the "grain board" at the offices of her employer. This was a small blackboard where "you don't have to move" in chalking up quotations.

In December, 1948, she was treated by a physician who gave her heat treatments and massage. As time went on her condition "gradually kept getting worse." She began to experience pains shooting down the back of her right leg. Plaintiff testified that her upper right leg is "getting" numb; she experiences pain in the lower back, and down the back of the right leg extending clear down into the calf; she cannot lift her right arm above her head without pain; she moves slowly and is stiff; she is unable to do her housework as she did before her injury; and she does not now engage in sports or dancing. She has lost weight, and there was a noticeable difference in her appearance within a few weeks after her injury. Plaintiff has not expended substantial sums for medical treatment, and there is no evidence of loss of wages.

Plaintiff was treated by Dr. Nigro in March and April, 1949. His examination of plaintiff revealed muscle spasm in the lower back, lumbosacral area, limitation of movement of the spine in all directions. The left shoulder revealed soreness with limited movement of her left arm. (This condition of her shoulder has been much

improved.) There was no definite bony structure deformity such as a dislocation or fracture, but the doctor stated plaintiff definitely has a herniated disc "with pressure upon the right sciatic nerve which is a disabling thing * * *." She is gradually getting worse and, unless she subjects herself to a myelogram and an operation, she will continue to get worse. Although plaintiff sustained an operation to relieve disorders peculiar to her sex, it was not shown that these disorders were the result of her injury; and there was testimony introduced by plaintiff that these disorders would not ordinarily cause the muscle spasm and backache such as plaintiff suffered because of her injury. The doctor said his diagnosis of a herniated disc was without a myelogram. Another physician, witness for plaintiff, testified that in order "to prove a disc conclusively myelographic studies must be done to be absolutely sure that it exists." A physician, witness for defendant Exchange, in speaking of his examination of plaintiff and of plaintiff's subjective symptoms, said, "* * * if her story is the story we can depend on of her complaints, I would list the disc as a number one likelihood."

The evidence was substantial in tending to show plaintiff suffered a herniated disc as a result of her injury. This is painful and disabling. Defendant-appellant Exchange has cited a number of cases wherein plaintiff's injuries were not comparable in nature or extent. As an example, see Baker v. Kansas City Terminal Ry. Co., Mo.Sup., 250 S.W.2d 999, wherein the award was reduced from $10,000 to $7,500. Plaintiff Baker was forty-three years old, and suffered severe aggravation of a pre-existing arthritic condition of the thoracic spine, and a loss of the normal curvature of the cervical spine with a "possible" herniated disc. There was no substantial evidence of a herniated disc. On the other hand, a plaintiff, twenty-nine years old, in the case of Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35, had suffered a herniated disc. This court, having considered the nature and extent of plaintiff's injury and its effect, held it was not justified in reducing the jury's award of $15,000 which had been approved by the trial court.

In our case the question of the excessiveness of the jury's award of $15,000 was directly considered by the trial court and the substantial reduction of $5,000 was required. In view of this fact and the nature and extent of plaintiff's injuries, and considering our question with a regard for the factors to be considered upon the question of excessiveness of awards, we are of the opinion a further reduction is not justified.

The judgment against defendants and in favor of plaintiff should be affirmed. And the judgment against defendant Exchange and in favor of defendant Building on its cross-claim for indemnity should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.