Curtis Ronald AMOS,
Plaintiff-Respondent,

v.

Aaron Lee ALTENTHAL,
Defendant-Appellant,

and

Cameron Mutual Insurance Company,
Defendant-Respondent.

No. 12517.

Missouri Court of Appeals,
Southern District,
Division Three.

Jan. 5, 1983.

Albert C. Lowes, Catherine R. McBride, Buerkle, Lowes, Beeson & Ludwig, Jackson, for defendant-appellant.

John P. Heisserer, Arnold & Heisserer, Benton, for plaintiff-respondent.

Charles Leible, Drumm & Leible, Sikeston, for defendant-respondent.

FLANIGAN, Judge.

This action arises out of an automobile collision which occurred on January 12, 1980, on Route K, an east-west two-lane street, in Scott City, Missouri. Plaintiff Curtis Amos had stopped his Chevrolet automobile in the westbound lane because a vehicle ahead of him was waiting to make a left turn to the south. While the Chevrolet was in its stopped position a pickup truck operated by defendant Altenthal struck the rear end of the Chevrolet. Plaintiff sued two defendants, Altenthal and Cameron Mutual Insurance Company. Counts I and II of the petition were directed against Altenthal. Count III was directed against Cameron Mutual.

In Count I plaintiff sought $26,600 damages for personal injuries and lost wages. On Count II plaintiff sought $350 for damage to his Chevrolet. These two counts charged defendant Altenthal with negligence in the operation of his pickup, including failing to keep a lookout and allowing his pickup to collide with the rear end of the Chevrolet.

In Count III plaintiff alleged "in the alternative" that he was the holder of a policy of insurance issued by Cameron Mutual on the Chevrolet; the policy included "uninsured motorist coverage"; Altenthal was "driving" the pickup "directly behind" plaintiff's Chevrolet when the pickup was struck in the rear by a fourth car; the unidentified driver of this unidentified fourth vehicle negligently permitted his vehicle to collide with the rear of Altenthal's pickup, forcing the pickup into the rear of the Chevrolet.

The jury found in favor of plaintiff Amos on Count I and Count II and found in favor of Cameron Mutual on Count III and awarded plaintiff $2,700 on Count I and $325 on Count II. Altenthal appeals from the ensuing judgment.

■ Altenthal's first point is that the trial court erred in denying his challenges for cause directed to veniremen Essner, Crump and Steimle because the veniremen "were policyholders of Cameron Mutual, a mutual insurance company," and "had a disqualifying interest in that each had at least a perceived financial interest in the outcome of the litigation and under such circumstances these veniremen were not capable of adjudging their own qualifications."

The three veniremen, who did serve on the jury, were policyholders in Cameron Mutual. On voir dire venireman Essner answered "no" to this question posed by Altenthal's counsel: "Do you feel, because you have a policy with Cameron, it is a mutual company, that you would be involved to a certain degree or it might have the effect of raising your premium if you

came in with an award here?" Essner answered "yes" to this question: "Could you give Cameron a fair shake and decide it on your common sense and the law as the judge gives it to you?"

Venireman Steimle answered "no" to this question: "Do you feel because you or your husband or some member of your family have one or more policies with Cameron Mutual that that would affect your judgment in this instance?" Mrs. Steimle also answered "no" to this question: "You would not feel, because it's a mutual company, and an award was entered, that might raise your premium the next time around?"

The record contains no other testimony touching the qualifications of the three veniremen. There is nothing in the foregoing testimony to demonstrate that any of the veniremen was in fact biased. Altenthal's position must be that a policyholder in a mutual insurance company,[1] which is a party to the action, is disqualified, as a matter of law, to sit as a juror. For the reasons which follow, this court must reject that position.

The only authorities cited by Altenthal in support of his position are *Barb v. Farmers Insurance Exchange,* 281 S.W.2d 297 (Mo. 1955) and *Kendall v. Prudential Insurance Co. of America,* 327 S.W.2d 174 (Mo. banc 1959). *Barb* is distinguishable and *Kendall* is adverse to Altenthal's position.

In *Barb,* Farmers Insurance Exchange was a defendant in an action brought by a plaintiff who was injured in a building of which Farmers was the lessee. The action was based on Farmers' negligence in creating a dangerous condition. The trial court *sustained* plaintiff's challenges for cause which were directed against four veniremen who were policyholders of Farmers, a "reciprocal insurance company." The trial court acted on the theory that the exchange was a "mutual" company, and the venire-

men, as subscribers and stockholders, had pecuniary interests in the case.

In affirming, the supreme court pointed out that § 494.190,[2] which sets forth several grounds for challenges for cause of veniremen in civil cases, is not all-inclusive. The court said, "[I]f for any reason, whether statutory or not, a venireman is not in a position to enter the jury box with an open mind free from bias or prejudice in favor of or against either party to the cause, and decide the case upon the evidence adduced and the law as contained in the court's instructions, he is not a competent juror.... In the instant case, it was not made unequivocally manifest that [Farmers] is a mutual company, nor was it clear that the challenged veniremen had any interest in the case which would disqualify them as jurors as a matter of law. Now we do not say it would have been error to overrule plaintiff's challenge for cause. Nevertheless, the record shows the trial court was earnestly and successfully acting in its discretion in qualifying eighteen veniremen competent to act, if selected as jurors, in fairly and impartially trying the issues of the case. We hold the trial court did not err or abuse its discretion in sustaining plaintiff's challenge."

In *Kendall* an action was brought against Prudential Insurance Company of America on the double indemnity provision of a group insurance policy insuring plaintiff's deceased husband. The supreme court held that the trial court did not err in *denying* plaintiff's challenges for cause of four veniremen who were Prudential policyholders.

The supreme court said: "The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury guaranteed by the Constitution, ... Such bias, inferred from interest, is also the basis for disqualifications of members of a mutual insurance company,

---

1. Altenthal made no proof that Cameron Mutual is in fact a mutual insurance company, unless the name itself supports that inference. All the parties seem to agree, at least tacitly, that such is the situation and this court makes that assumption.

2. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

*liable to be assessed to pay losses incurred."* (Emphasis added.) The court pointed out that there was no showing that the challenged Prudential veniremen had assessable policies. "Furthermore, there was no showing as to what kind of policies these veniremen had, whether they were entitled to any dividends or even paid premiums." Finally the court said: "[A] challenge for cause is not required to be sustained as to every kind of policyholder under all circumstances. In view of modern widespread use of all kinds of insurance, such a rule would be unreasonable *at least as to those with nonassessable policies or those who do not participate in policy dividends."* (Emphasis added.)

In some situations the Missouri courts have held that a relationship of a venireman to a party disqualifies him, as a matter of law, from serving as a juror. See, for example, *Ozark Border Electric Cooperative v. Stacy,* 348 S.W.2d 586 (Mo.App.1961), holding that "members" of a rural electric cooperative were disqualified to sit as jurors in an action in which the cooperative was plaintiff. In that case the court cited many foreign authorities holding that a stockholder in a corporation is incompetent to sit as a juror in an action to which the corporation is a party or in which it has a direct pecuniary interest.

Altenthal made no showing that the Cameron Mutual policies of the three challenged veniremen were assessable policies nor did Altenthal show that the veniremen participated in policy dividends. This court is not saying that the trial court would have been wrong in sustaining the challenges to the Cameron Mutual policyholders but, controlled by *Kendall,*[3] this court holds that the three veniremen were not, as a matter of law, disqualified and that the trial court did not abuse its discretion in denying Altenthal's challenges for cause. Altenthal's first point has no merit.

Altenthal's second point is that the trial court improperly restricted his cross-examination of plaintiff Amos by excluding evidence of plaintiff's earnings from 1976 through 1980 and by excluding evidence of plaintiff's collection of unemployment compensation. "[E]xcept in a few situations [none applicable here] ... whenever there is an allegation of error which pertains only to the issue of damages, appellant must brief a separate point demonstrating that the verdict was excessive as a result of that particular allegation of error." *Myers v. Bi-State Development Agency,* 567 S.W.2d 638, 643[7] (Mo. banc 1978). This rule has been incisively criticized by the court of appeals. See *Chrisler v. Holiday Valley, Inc.,* 580 S.W.2d 309, 312 (Mo.App.1979) and *Miller v. Haynes,* 454 S.W.2d 293 (Mo.App. 1970). Altenthal has not claimed, by a separate point, that the verdict was excessive. Altenthal's second point has not been preserved.

According Altenthal's second point gratuitous review under the "plain error" doctrine, Rule 84.13(c), this court finds that no manifest injustice or miscarriage of justice resulted from the trial court's ruling. Although the rejected evidence concerning plaintiff's earnings was relevant, and arguably material, on plaintiff's claim of lost earnings, plaintiff testified that he had fully recovered from his injuries by April 1980. Plaintiff's doctor testified that plaintiff was able to return to work on March 17, 1980. Plaintiff, on cross-examination, admitted that he drew unemployment compensation and also admitted, with regard to 1979, that he earned only $3,200.06, that jobs were "tough to find," and "I worked when I could find a job." Plaintiff also testified, "I don't maintain that I was fully employed up until the time of the accident." There was no claim of permanent injury or permanent loss of earning capacity. Altenthal's second point has no merit.

---

3. The *Kendall* case was transferred to the supreme court from the Kansas City Court of Appeals. The opinion of the latter tribunal, with which the supreme court disagreed, is found in *Kendall v. Prudential Insurance Company of America,* 319 S.W.2d 1 (Mo.App.1958). That opinion would have sustained defendant Altenthal's position. Although overruled, it merits reading.

Altenthal's third point is that the trial court improperly restricted his cross-examination of plaintiff Amos by excluding evidence of an accident report signed by plaintiff and sent to Altenthal's liability insurer. Seeking to defend the trial court's ruling, plaintiff Amos argues that the form was inadmissible because it constituted a settlement offer of $1,000. Plaintiff's argument need not be considered for the reason that Altenthal elicited from plaintiff substantially the same information which Altenthal sought to prove by the report. On cross-examination by Altenthal's counsel plaintiff testified that on January 14, 1980, he "filled out a form making claim against Altenthal, saying nobody was hurt and all I was interested in was property damage." In light of the foregoing testimony, the trial court did not commit prejudicial error in excluding the report.

Altenthal's fourth point is that the trial court erred in refusing to allow Altenthal's counsel to cross-examine plaintiff as to whether he heard a statement made by Williams in plaintiff's presence immediately after the pickup-Chevrolet collision. Altenthal argues that the content of Williams' statement was admissible under the res gestae exception to the hearsay rule. This court has reviewed Altenthal's offer of proof. It was insufficient to constitute a foundation for a res gestae statement. There was no showing that Williams, who had been drinking and was not injured, "was suffering from pain, shock or excitement at the time of the utterance." *Wren v. St. Louis Public Service Company,* 333 S.W.2d 92, 96 (Mo.1960). Altenthal called Williams himself as a witness and the jury was aware of his version. Altenthal's fourth point has no merit.

Before Altenthal's other points are considered it is necessary to describe the respective trial theories of the parties. Although plaintiff had filed Count III against Cameron Mutual on the theory that a hit and run driver existed, that theory was based upon versions of the accident given by Altenthal and John Williams during pre-trial discovery. Williams was a passenger in plaintiff's Chevrolet.

Plaintiff's liability witnesses were Officer Hayes, Officer Fowler, Richard Blankenship and plaintiff himself. Their testimony, in general, would have entitled the jury to find that there was no fourth driver nor fourth vehicle and that the only collision which took place was that between Altenthal's pickup and plaintiff's Chevrolet. The testimony of Cameron Mutual's witness Spradling would have supported the same finding.

Defendant Altenthal's liability witnesses were Williams and Altenthal himself. If the jury believed their testimony, there was an impact between the fourth vehicle and Altenthal's pickup close to the time of the pickup-Chevrolet collision. Altenthal's counsel argued to the jury that the fourth vehicle caused the pickup-Chevrolet collision.

Although Altenthal's voluminous brief contains nine pages of "points relied on," Altenthal makes no claim that plaintiff failed to make a submissible case against Altenthal on the basis of his conduct, nor does Altenthal claim that plaintiff failed to make a submissible case against Cameron Mutual on the basis of the conduct of the fourth driver. Altenthal makes no claim that plaintiff should have been required to elect between submitting against Altenthal and submitting against Cameron Mutual, and Altenthal did not file a motion in the trial court requesting an election. Altenthal makes no claim that the verdict-directing instructions against Altenthal and Cameron Mutual respectively should not have been given because they were based on inconsistent theories or inconsistent facts.[4]

4. See "Missouri Pleadings and Instructions Based on Inconsistent Theories," 45 Mo.L.Rev. 727 (1980). At p. 737 of that excellent article the author, Edward M. Pultz, states:

"In many situations dealing with inconsistent submissions, a party does not want to ride two horses but rather wants to know which of two horses to ride. In the typical case, a party does not know what the jury will ultimately find as the true facts, and feels that he has a right to recover on either set of facts, but not on both. Forcing a party to choose between inconsistent

Altenthal's various complaints leveled at the instructions which were given are based upon alleged deficiencies in their content as distinguished from a complaint that the respective instructions, even in proper form, should not have been given at all.

■ Altenthal's fifth point is that the trial court erred in refusing to admit into evidence an affidavit signed by plaintiff Amos and filed by him in opposition to a pre-trial motion for summary judgment filed by Cameron Mutual. In that affidavit plaintiff Amos merely stated that "the pleadings of defendant Altenthal allege, and the testimony of Altenthal given on deposition declares, that the [pickup-Chevrolet collision] was caused by [Altenthal] actually being struck in the rear of his pickup truck by another vehicle who did not stop at the scene of the accident, but left." The affidavit also recited: "For purposes of this affidavit only, the position of [Altenthal] as to such facts [is] incorporated herein by reference."

This court rejects Altenthal's argument that the affidavit contained an admission on the part of plaintiff with regard to the manner in which the accident happened. Altenthal's fifth point has no merit.

Altenthal's sixth point is that the trial court erred in refusing to allow Altenthal's counsel to read the complete deposition of John Williams or to introduce a written statement made by Williams on January 22, 1980, which was attached to that deposition as Cameron's Exhibit 1.

■ The record shows that attorney Lowes, Altenthal's counsel, read to the jury, as part of Altenthal's case, a portion of the deposition of Williams, who was absent.

theories before submission to the jury forces the submitting party to second-guess the finder of fact. If he guesses wrong, he loses even though he may have had a valid claim or defense based upon the theory he was forced to discard."

In the instant case plaintiff's personal testimony was not flatly to the effect that there was no fourth vehicle.

Plaintiff gave the following testimony:

"Q. Was there any other vehicle behind [Altenthal's pickup]?

Mr. Lowes, before reading the deposition, told the court and the jury, "I will read the questions and answers, then other counsel can read the ones they want to." After reading a portion of the deposition, attorney Lowes said, "I believe that is all, you may ask." Counsel for Cameron Mutual then stated to the court, "I want to read part of his deposition in my case, not in Mr. Lowes' case." It was at that juncture that Lowes stated, "I will continue reading, I will read the whole thing." Attorney Lowes also told the court, "I will let them read their parts, and what they skip, I will read."

The fact is that the entire deposition, except for Exhibit 1, was read to the jury, although some of it was read as part of Cameron Mutual's case. Any error on the part of the court in not permitting Mr. Lowes to continue to read all of the deposition during Altenthal's case was not prejudicial and was invited by Mr. Lowes.

■ The deposition of Williams was taken on behalf of Altenthal and attorney Lowes conducted the direct examination. During the cross-examination of the witness by Cameron Mutual's attorney, Mr. Leible, the witness was asked if he had signed any statements. Attorney Lowes volunteered the remark, "We have a statement dated January 22, 1980, and if you wish to see it I will show it to you." The statement was handed to Mr. Leible and marked "Cameron's Exhibit 1." The witness, during Mr. Leible's cross-examination, admitted that he signed the exhibit and that it was "an accurate account of what happened." The statement was not offered into evidence at the deposition.

"A. Not that I seen.

"Q. Did you look back there to see?

"A. Well, we was walking around, I didn't see any. There was traffic lined up behind him after the wreck happened."

So far as Altenthal is concerned, plaintiff's own testimony was consistently to the effect that Altenthal's negligence caused the pickup-Chevrolet collision.

At the trial plaintiff and Cameron Mutual objected to the portion of the deposition referring to Exhibit 1 and to the introduction of the exhibit itself and the trial court sustained the objection. Attacking that ruling, Altenthal argues that "the whole testimony of Williams was admissible" and that "the jury was entitled to know that Williams gave his testimony shortly after the accident and was cross-examined on that statement during his deposition."

"At the trial ... any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying,* may be used against any party who was present or represented at the taking of the deposition...." Rule 57.07(a). (Emphasis added.)

The contents of Exhibit 1 are essentially the same as the testimony given by Williams on direct examination. Neither plaintiff nor Cameron Mutual impeached Williams through the use of a prior inconsistent statement. In *McElhattan v. St. Louis Public Service Company,* 309 S.W.2d 591, 594–595 (Mo.1958), the court said that the general rule is that "when a witness has merely testified on direct examination, without any impeachment, proof of consistent statements is valueless.... The witness is not helped by it; and although his story may be improbable or untrustworthy, it is not made more probable or trustworthy by any number of repetitions of it. Such evidence would ordinarily be both irrelevant and cumbersome to the trial, and hearsay; and courts generally reject it." The court held that prior consistent statements of a witness, offered for the purpose of rehabilitating the witness, are not admissible in the absence of evidence "tending to establish statements made by the witness, which statements were inconsistent with his testimony at the trial."

In *Long v. F.W. Woolworth Company,* 232 Mo.App. 417, 109 S.W.2d 85 (1937), plaintiff's counsel cross-examined a defense witness concerning the making of a certain written statement but did not seek to contradict the witness with it or any other prior statement. It was held that the statement could not thereafter be used by the defendant to bolster the testimony of the witness and the trial court properly excluded it as hearsay. Altenthal's sixth point has no merit.

■ Altenthal's seventh point challenges the burden of proof instruction, Instruction 5, which is based on MAI 3.01 (1981 revision). The second sentence of Instruction 5 reads: "The burden of causing you to believe a proposition of fact is upon the party whose claim or defense depends upon that proposition." Altenthal argues that it was improper to insert the words "or defense." Altenthal does not claim that Instruction 5 is an erroneous statement of the law. Altenthal argues that the words "or defense" are to be given *only* when a defendant asserts an affirmative defense and "no defendant offered an affirmative defense."

The fact is that the trial court gave Instruction 8A, offered by Altenthal, which reads:

"Your verdict must be for defendant, Aaron Lee Altenthal, if you believe that the vehicle operated by Aaron Lee Altenthal was struck in the rear and propelled by the force of that collision into the rear of the plaintiff's vehicle."

Altenthal argues that Instruction 8A is a modification of MAI 33.05, a converse instruction. The merits of that doubtful argument need not be weighed nor is it necessary to determine whether Instruction 8A violates MAI 1.03 which reads: "No instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence."

The jury could have considered Instruction 8A as submitting a "defense." If it was error to include "or defense" in Instruction 5, Altenthal invited the error by tendering Instruction 8A. Altenthal's seventh point has no merit.

■ Altenthal's eighth point challenges Instruction 7 which is based on MAI 2.05 (1980 New). Instruction 7 reads:

"Instructions 7 through 9 and general instructions 1 through 6 apply to the claim of plaintiff Curtis Ronald Amos against defendant Aaron Lee Altenthal for personal injuries and property damage." Altenthal's complaint is that Instruction No. 7 fails to include the last sentence of MAI 2.05 which reads: "Use Verdict _____ to return your verdict on this claim."

The jury used the proper verdict form in returning its verdict in favor of plaintiff and against Altenthal. The error was not prejudicial. Rule 84.13(b). Altenthal's eighth point has no merit.

■ Altenthal's ninth point challenges Instruction 8, plaintiff's verdict-directing instruction against Altenthal. Paragraph third of Instruction 8 reads: "Third, such negligence directly caused or directly contributed to cause damage to plaintiff." Altenthal argues that the instruction was erroneous in including the words "or directly contributed to cause." Altenthal says: "This is not a joint tort-feasor situation. Plaintiff sought judgment against Altenthal or Cameron Mutual and not against both. If in fact both Altenthal and the hit and run driver were negligent, such was successive and not concurrent."

It is true that there can be a factual situation where Driver A, whose vehicle is rear-ended by Driver B, may not recover against Driver B under the rear end doctrine where a vehicle driven by Driver C collided with the rear end of the B vehicle and shoved it into the rear end of A's vehicle. See, for example, *Cosens v. Smith,* 528 S.W.2d 772 (Mo.App.1975). The flaw with Altenthal's contention is that he makes no effort to demonstrate, by appropriate references to the lengthy testimony of the various witnesses, that such is the factual situation here. As previously stated, Altenthal has not claimed that plaintiff failed to make a submissible case against either Altenthal or Cameron Mutual.

This court has no responsibility to analyze the evidence to determine whether the pickup-Chevrolet impact was caused solely by the negligence of Altenthal or solely by the negligence of the "fourth driver" or by a combination of the two. Other attacks upon Instruction 8, contained in Altenthal's point were not developed in his argument under that point and are abandoned. Rule 84.04(e). *MaHaffy v. City of Woodson Terrace,* 609 S.W.2d 233, 236[1] (Mo.App.1980). Altenthal's ninth point has no merit.

■ Altenthal's tenth point is that the trial court erred in refusing to give Instruction A, tendered by Altenthal. Instruction A, in general, informed the jury that any award made to plaintiff as damages was not subject to federal or state income taxes. The refused instruction was based on *Dempsey v. Thompson,* 363 Mo. 339, 345–346, 251 S.W.2d 42, 45–46[1–3] (1952). The same point was advanced and rejected by this court in *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 226[14] (Mo.App. 1981). For the reasons stated there, Altenthal's tenth point has no merit.

■ Altenthal's eleventh point is that the trial court erred in refusing to allow Altenthal's counsel to inform the jury, during opening statement or in closing argument, that any award made to plaintiff would not be taxable. Although the trial court had refused to give Instruction A, mentioned under point ten, Altenthal's counsel, Mr. Lowes, told the jury, in his closing argument, "This is the fellow that comes in here wanting some tax-free money." For that reason and for the reasons set forth under Altenthal's second point, Altenthal's eleventh point has no merit.

Altenthal's twelfth point levels a multifaceted attack upon Instruction 11 and Instruction 12. Both of these instructions dealt only with the claim of plaintiff Amos against Cameron Mutual and the jury was so instructed by Instruction 10.

■ An appealing defendant cannot complain of error committed against a nonappealing co-defendant unless the error is prejudicial to the rights of the appealing defendant. That principle applies to defects in instructions. *Steele v. Yacovelli,* 419 S.W.2d 477, 479 (Mo.App.1967). This court has examined the claimed defects in

Instruction 11 and Instruction 12. The errors, if any, are trivial and did not prejudice Altenthal. They do not merit discussion.

The judgment is affirmed.

GREENE, C.J., and MAUS and PREWITT, JJ., concur.